UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **JONATHAN J. SAHIM,** Individually and on Behalf of All Other Similarly Situated Consumers, | ) ) ) | |
| Plaintiff, | ) ) | **Case No. 1:09-cv-4279** |
| vs. | ) ) ) | **Honorable Marvin E. Aspen** |
| **DEALERS WARRANTY, LLC a/k/a Mogi a/k/a FEDERAL AUTO PROTECTION, WARRANTY FINANCE, LLC**, and **BRIAN ALBERT MARINO,** | ) ) ) ) ) | **SECOND AMENDED CLASS ACTION COMPLAINT** |
| Defendants. | ) ) | **JURY TRIAL DEMANDED** |
| | ) | |

Plaintiff Jonathan J. Sahim, by and through his attorneys, Sanford Wittels &

Heisler, LLP, the Law Offices of Mark S. Baumkel & Associates, Ram & Olson, LLP,

and Levin & Perconti, brings this class action on behalf of himself and a class of

similarly-situated consumers, and alleges as follows:

## I.    OVERVIEW OF DEFENDANTS' FRAUDULENT SCHEME

1.      This class action suit arises from an ongoing wrongful scheme to extract

hidden interest charges and penalties from consumers who cancel extended warranty

vehicle service contracts before the term of coverage expires.

2.      Consumers, facing a hard sell from Defendant, Dealers Warranty LLC,

purchase these service contracts without realizing they contain hidden traps, or that their

cars often already have existing warranty and service protections from the manufacturers.

When consumers try to get out of these agreements, Defendants penalize car owners with

exorbitant fees that are nowhere spelled out in the contracts.  Among other things,

Defendants' conduct violates the Federal Truth in Lending Act, the Illinois Consumer Fraud Act, and constitutes a breach of contract.

3.      Defendants' scheme works as follows. Dealers Warranty sells consumers a service contract for a flat price that supposedly covers the vehicle owner for the lesser of a fixed term (e.g., 60 months) or fixed mileage (e.g., 100,000 miles). Dealers Warranty encourages consumers to finance their purchase with an initial down payment followed by monthly installment payments.

4.      Generally, consumers' monthly installments are large enough so that purchasers finish making payments several years before their service contract coverage term ends. Thus, if a consumer decides to cancel the service contract before his coverage term expires, for example if he sells his car, he will have already paid for the contract in full at the time of cancellation. In such case, the service contract stipulates that consumers are entitled to receive a *pro rata* refund for the months of coverage paid for but not used, less a fifty dollar ($50) cancellation fee.

5.      Plaintiff Mr. Sahim cancelled his contract before the coverage term expired. Rather than giving him the full *pro rata* refund to which he was entitled, however, Defendants wrongfully sent him a refund check that deducted hundreds of dollars in hidden interest charges and fees in violation of his service contract. When Mr. Sahim complained to Dealers Warranty about the insufficient refund, he learned for the first time that Defendants were charging him an unspecified interest rate for having cancelled his contract, on top of an exorbitant 10% "marketing fee."

6.      Defendants nowhere disclosed the surprise interest rate charge in any of their service contracts. Further, Defendants buried the so-called 10% "marketing fee" in

a tiny footnote without adequately or clearly disclosing that consumers would forfeit 10%
of the contract price if they tried to cancel early.

7.        Recently Dealers Warranty was sued by national phone companies for
engaging in mass automated phone blitzes to millions of random households, Dealers
Warranty entered a consent decree to stop violating the "no-call" law which was designed
to prevent such illegal phone solicitations.  Moreover, Congress recently held hearings on
these same extended warranty service scams.

8.        Plaintiff Mr. Sahim thus brings this suit as a class action on behalf of
himself and all similarly-situated consumers who have been victimized by Defendants'
unconscionable and deceptive business practices.  Plaintiff suffered the same type of
monetary injury as other consumer-class members when he attempted to cancel his
service contract.

9.        Plaintiff and the Class seek to hold Defendants jointly and severally liable
for actual damages, statutory damages, all equitable and/or legal remedies, attorneys fees,
and costs for their violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*
("TILA"), as implemented by Federal Reserve Board Regulation Z, 12 C.F.R. § 226;
violations of the Illinois Consumer Fraud Act, 815 ILCS § 505/1 *et seq.*; breach of
contract; and unjust enrichment.

## II.    JURISDICTION AND VENUE

10.       The Court has federal subject matter jurisdiction over this action pursuant
to the Truth in Lending Act, 15 U.S.C. § 1640(e) and 28 U.S.C. §§ 1331 and 1337.  The
Court has supplemental jurisdiction over claims arising under Illinois statutes and
common law pursuant to 28 U.S.C. § 1367.

11.     Alternatively, this Court has federal subject matter jurisdiction over the action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because there are at least one hundred (100) class members, the aggregated amount in controversy exceeds $5 million ($5,000,000), and the parties are citizens of different states: Plaintiff is a citizen of Virginia, Defendant Dealers Warranty is a Missouri limited liability company, and Defendant Warranty Finance is a Delaware limited liability company with its principal place of business in Chicago, Illinois.

12.     This Court has personal jurisdiction over Defendants because at all times relevant to this action, Defendants have conducted substantial and continuous commercial activities in the State of Illinois, including in this District.

13.     Venue is proper to this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district and because Defendants' contacts with this district are sufficient to subject them to personal jurisdiction in this Court.

III.     **THE PARTIES**

14.     Plaintiff Jonathan J. Sahim is a citizen of Virginia who purchased an extended warranty vehicle service contract from Dealers Warranty, LLC on or about October 19, 2007. The stated price for the service contract was $1,425 for a 60-month term of coverage. Plaintiff made a down payment of $72 and agreed to pay Defendants the balance of the contract in equal monthly installments of $56.38 per month over 24 months.

15.     Defendant Dealers Warranty, LLC is a limited liability company, with its headquarters and principal place of business at 745 Friedens Road, Saint Charles,

4

Missouri 63303. For the past two years, Dealers Warranty alternately has conducted the same types of business transactions under the names "Mogi" and "Federal Auto Protection," names for which Dealers Warranty has filed Registration of Fictitious Name certificates. Dealers Warranty, solicits business from consumers throughout the United States, maintains registered offices in nearly every state, and expects to have as many as a thousand employees by the end of 2009.

16.     Defendant Warranty Finance, LLC is a limited liability company with its headquarters and principal offices at 300 South Wacker Drive, Suite 2250, Chicago, Illinois 60606. Defendant Warranty Finance is named as both the "service provider for collection" and "Warranty Payment Processing Center" in Defendant Dealers Warranty's standard form contracts. Defendant Warranty Finance sends from its offices in Illinois monthly billing statements to consumers expressly referencing the extended warranty contract and all periodic monthly payments by plaintiff and other members of the class are sent to Warranty Finance in Illinois.

17.     Upon information and belief, Defendant Brian Albert Marino is and at all times relevant has been the controlling owner and/or president of Defendant Dealers Warranty. In this capacity, Marino is personally liable for participating in Dealers Warranty's tortious and wrongful conduct.

18.     Each Defendant acts and at all relevant times has acted as the principal and/or agent of the other in all material acts and omissions described in this Complaint.

## IV.    FACTUAL ALLEGATIONS

### A.    Defendants' Business

19.     Dealers Warranty aggressively promotes the sale of Defendants'extended

vehicle warranty service contracts through telephone, internet, and postal mail solicitations. As part of their sales pitch to potential purchasers, Defendants claim that service contracts are easily affordable when financed through small monthly payments.

20.     These aggressive consumer solicitation practices have prompted the Attorneys General of many states, including Defendant Dealers Warranty's home state of Missouri, to investigate Dealers Warranty for violating telephone sales solicitation laws and misrepresenting the benefits of warranty coverage in relation to the service contracts' costs, among other things. The Missouri Attorney General imposed a large fine on Defendant Dealers Warranty for engaging in these deceptive and anti-consumer practices. Further, Verizon and related parties recently sued Dealers Warranty for abusive and unlawful telephone sales solicitation practices. These were precisely the sort of deceptive practices which convinced plainitff to purchase a service contract for his used car.

**B.     Plaintiff's Purchase and Cancellation of the Service Contract**

21.     Mr. Sahim purchased a service contract from Dealers Warranty on or about October 19, 2007 for his 1994 Dodge Caravan. The contract price, which excluded taxes and did not disclose any additional costs, was $1,425 for sixty (60) months of warranty coverage. Mr. Sahim made an initial down payment of $72 on October 19, 2007, and agreed to pay monthly installments of $56.38 for the next 24 months. At the end of these 24 payments, the contract price would be fully paid.

22.     From October 2007 until March 2009, Mr. Sahim made seventeen (17) monthly payments of $56.38 to Warranty Finance LLC in Carol Stream, Illinois pursuant to monthly billing statements sent to him by Warranty Finance which expressly referenced the extended warranty contract, in addition to his $72 down payment, for a

total of $1,030.46 towards the total $1,425 contract price. Accordingly, during those 17 months, Mr. Sahim paid for more than forty-three (43) months of coverage on a prorated basis; in other words, he made 17 actual payments and paid for an additional twenty-six (26) months of service coverage in advance.

23.     Mr. Sahim wrote to Dealers Warranty on or about March 25, 2009 to cancel his warranty service contract.   Because he had paid for more than 43 months of coverage but had only received the value of 17 months of coverage, Mr. Sahim expected a refund of $576.71: i.e., the $1,030.46 he had paid to date, less $403.75 for 17 months of warranty service at a prorated value of $23.75 per month, and less a $50 cancellation fee stipulated in his contract. That maximum $50 cancellation charge was the only fee that Defendants disclosed in the section of the contact entitled, "Cancellation of Vehicle Service Contract."

24.     On or about April 10, 2009, however, Defendant, Dealers Warranty sent Plaintiff a check for $318.24 less than Mr. Sahim expected. The "cancellation refund" was for only $258.47 and contained no explanation as to how this amount was calculated.

25.     Plaintiff Mr. Sahim contacted Dealers Waranty by telephone to request a written explanation for the reason the refund was hundreds of dollars less than he expected, but Dealers Warranty refused to provide a written explanation. During a telephone conversation, however, one of Dealers Warranty's representatives stated that the warranty company had lowered his refund by charging "interest" of $175.74 on the amount financed, plus a "marketing fee" equal to 10% of the total contract amount, or $142.50. Defendants charged these surprise fees on top of the contract's stated $50 cancellation fee. In total, Defendants thus charged Mr. Sahim $368.24 to cancel his

policy: more than 60% of his expected refund and over 25% of the total value of his contract.

26.    Defendants failed to disclose in Mr. Sahim's standard form contract that cancellation of the contract would result in an exorbitant interest charge. Nor did Defendants clearly or conspicuously disclose that -- in addition to the stated $50 cancellation fee -- Defendants would add on a whopping *second* cancellation fee equal to 10% of the total value of the contract if a consumer tried to end the agreement and obtain a refund. In addition to being a hidden cancellation fee, this second so-called "marketing fee," had nothing to do with "marketing" and was, upon information and belief, never earned by the Defendants.

27.    Moreover, Defendants were unjustly enriched by receipt of unearned premiums from thousands of customers for periods of time when there existed no risk of loss after customers sold or otherwise disposed of their vehicles prior to end of the contract period. Defendants failed adequately to disclose that all customers who disposed of their vehicle prior to end of the contract term were entitled to pro rata refunds.

28.    Defendants mass-marketed their standard form contracts to Plaintiff and the Class. Upon information and belief, these standard contracts all contain a clause designating Illinois law as the governing law for all legal disputes concerning the contracts.

## V.    CLASS ACTION ALLEGATIONS

29.    **Class Definition**. Pursuant to Fed. R. Civ. P. 23, Plaintiff Jonathan Sahim brings the action on behalf of himself and a Class of all similarly-situated consumers, preliminarily defined as:

All persons who, within the applicable limitations period, (i) have purchased or will purchase an extended warranty vehicle service contract from Dealers Warranty, (ii) whom Defendants have charged or will charge "interest" and/or a "marketing fee," and/or any other undisclosed or inadequately disclosed fees when they cancel their service contract; and (iii) have purchased a warranty contract from defendants and have sold or otherwise disposed of the covered vehicle prior to the end of the contract term and who have not received a pro rata refund of prepaid premiums.

30. Plaintiff excludes from the Class all business purchasers of Defendants' services; Defendants; any affiliate, parent, or subsidiary of Defendants; any entity in which Defendants have a controlling interest; any officer, director, or employee of Defendants; any successor or assign of Defendants; and any Judge to whom this case is assigned as well as his or her immediate family.

31. **Numerosity of the Class (Fed. R. Civ. P. 23(a)(1)).** Members of the Class are so numerous that their individual joinder is impracticable. While the precise number of Class Members has not been determined at this time, the Warranty Defendants have sold thousands of extended warranty vehicle service contracts to consumers nationwide, maintain registered offices in nearly every state, and advertise that their vehicle warranty business is so active that it anticipates needing one thousand employees this year.

32. **Existence and Predominance of Common Questions of Law and Fact (Fed. R. Civ. P. 23(a)(2) & (b)(3)).** Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual Class Members. These common questions of law and fact include:

i. Whether Defendants made material misrepresentations to consumers and/or failed to reasonably disclose material information to consumers concerning cancellation fees, consumer credit costs, and/or "interest";

9

and/or failed reasonably to disclose that customers were entitled to early termination refunds;

ii. Whether by their representations and omissions, Defendants violated the Illinois Consumer Fraud Act;

iii. Whether by their representations and omissions, Defendants violated the Truth in Lending Act (TILA);

iv. Whether Defendants breached the terms of their form contracts with the class members by imposing undisclosed or inadequately disclosed cancellation fees;

v. Whether Defendants were unjustly enriched by imposing excessive cancellation fees upon Plaintiff and class members and retaining unearned premiums;

vi. Whether consumers are entitled to actual, statutory damages and/or restitution, plus costs, interest, and attorney fees;

vii. Whether restitution should be paid by Defendants into a common fund for the benefit of the Class.

33. **Typicality (Fed. R. Civ. P. 23(a)(3)).** Plaintiff is a member of the Class and his claims are typical of the claims of other Class Members. Like all Class Members, Plaintiff has been injured by Warranty Defendants' common wrongful practice of charging undisclosed or inadequately disclosed fees upon cancellation of service contracts, including "interest" and "marketing fees."

34. **Adequacy of Representation (Fed. R. Civ. P. 23(a)(4)).** Plaintiff will fairly and adequately represent and protect the interests of the Class. His interests are

coincident and not antagonistic to those of Class Members. Plaintiff has retained Counsel that are competent and experienced in litigating consumer fraud class actions and have no conflicts in undertaking this litigation.

35.    **Superiority of a Class Action (Fed. R. Civ. P. 23(b)(3).** Due to the uniformity of the injuries experienced by Class Members, a class action is superior to all other available means for the fair and efficient adjudication of the controversy. Adjudication of individual claims would be prohibitively expensive for individual Class Members and for the court system as a whole. Individualized litigation would create the risk of inconsistent or varying adjudication that could establish incompatible standards of conduct for Warranty Defendants and would create the risk of adjudications that would, as a practical matter, be dispositive of the interests of Class Members not parties to the adjudications. By contrast, the class action device provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE TRUTH IN LENDING ACT
**(15 U.S.C. § 1602 as Implemented by Federal Reserve Board Regulation Z § 226)**

36.　　Plaintiff realleges and incorporates by reference all the foregoing paragraphs as though fully stated herein.

37.　　At all relevant times, Plaintiff and Class Members have been "consumers" within the meaning of the Truth in Lending Act (TILA) as defined by 15 U.S.C. §1602(h), in that they are natural parties to whom credit was offered for a service contract acquired primarily for personal, family, or household purposes.

38.　　At all relevant times, all Defendants have been "creditor[s]" within the meaning of TILA, 15 U.S.C. § 1602(f) and Regulation Z § 226.2(a)(17), because they regularly extend or offer to extend consumer credit in connection with the sale of goods which, by written agreement, is payable in more than four installments or for which a finance charge may be imposed, and they are the entities to whom the debt that is the subject of this action is initially payable.

39.　　Each of the Defendants has granted "credit" as that term is defined by TILA, 15 U.S.C. §§ 1602(e) and (f), because they have granted Plaintiff and Class Members the right to defer payment of a debt in more than four installments and/or required the payment of a finance charge.

40.　　The Truth in Lending Act at 15 U.S.C § 1638(a) and its implementing regulations require that the Creditor "clearly and conspicuously" make numerous disclosures about the credit being granted and prescribe the manner and format of the disclosures at 15 U.S.C. § 1638(b)(1).

41.     Defendants violated the TILA and its implementing regulations, 15 U.S.C. § 1638(b) and Regulation Z § 226.17(b), by failing to provide all required disclosures to consumers required before consummating the financing transaction.

42.     Defendants violated the TILA and its implementing regulations, 15 U.S.C. § 1605 and Regulation Z § 226.4, by failing to clearly and conspicuously include in their extended warranty vehicle service contracts all charges and fees that Defendants intended to charge Plaintiff and the Class upon cancellation of a contract, including interest charges and marketing fees. By misrepresenting and/or omitting to describe all charges in their standard-form service contracts, Defendants violated 15 U.S.C. § 1638(a)(3) and Regulation Z § 226.18(d).

43.     Defendants violated the TILA and its implementing regulations, 15 U.S.C. § 1632(a) and Regulation Z § 226.17(a) by failing to provide the above required disclosures clearly and conspicuously in writing, in a form that the consumer may keep.

44.     Defendants violated the TILA and its implementing regulations, 15 U.S.C. § 1632 and Regulation Z § 226.17, by failing to make the required disclosures clearly and conspicuously before consummation of the transaction, or deliver or place them in the mail not later than three business days after Defendants received the consumer's written application, whichever was earlier.

45.     As a result of Defendants' failure to make the required disclosures, Plaintiff and the Class have suffered injury and are entitled to recover all damages allowed under TILA including actual damages, statutory damages, costs, interest and attorneys' fees pursuant to 15 U.S.C. § 1640.

## COUNT II
## VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT
### (815 ILCS § 505/1 *et seq.*)

46.     Plaintiff realleges and incorporates by reference all the foregoing paragraphs as though fully stated herein.

47.     At all relevant times, Defendants have engaged in "trade" or "commerce" within the meaning of the Illinois Consumer Fraud Act, 815 ILCS § 505/1(f), and Plaintiff and Class Members have been "consumer[s]" within the meaning of the Illinois Consumer Fraud Act, 815 ILCS § 505/1(e). Defendants' representations and concealments violated the Illinois Consumer Fraud Act, 815 ILCS § 505/1 *et seq.*, which proscribes and makes unlawful unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, or misrepresentation or the concealment, suppression, or omission of any material fact, with the intent that others rely upon the concealment, suppression, or omission of such material fact.

48.     Defendants violated duties under the Illinois Consumer Fraud Act, 815 ILCS § 505/1 *et seq.*, by failing to disclose mandatory information required by the Illinois Interest Act to Plaintiff and Class Members such as the fact that an "interest" charge would be incurred upon cancellation of the extended warranty vehicle service contract and by failing to adequately disclose that an exorbitant "marketing fee" of 10% of the entire contract amount would be imposed as a cancellation penalty, and by failing adequately to disclose to customers that they were entitled to early termination refunds for periods of time when customers sold or disposed of their covered vehicles.

49.     Defendants knowingly and fraudulently misrepresented, concealed,

14

suppressed, or omitted material facts in their dealings with Plaintiff and Class Members in violation of 815 ILCS § 505/2. These material facts include the total amount of fees payable to Defendants, including without limitation the "interest" and alleged "marketing fees" incurred upon termination of a service contract with Defendants.

50.     Defendants knowingly and willfully failed to fully and adequately disclose the terms of the service contracts at issue. Defendants engaged in consumer transactions where interest was either contracted for or received without clear written disclosure of the relevant terms, including the terms related to the assessment of interest. Through these acts and omissions, Defendants violated the Illinois Interest Act, 815 ILCS § 205/4, incorporated by reference into the Illinois Consumer Fraud Act, 815 ILCS § 505/1, *et seq.*

51.     At all relevant times, Defendants engaged in the unfair and deceptive trade practices described here with the intention that consumers, including Plaintiff and the Class, rely on Defendants' misrepresentations and omissions.

52.     Defendants' acts in failing to disclose all fees and deceptively disclosing additional fees were conducted with actual malice and/or an evil motive. Alternatively, Defendants' acts were performed with a reckless indifference toward the rights of others and Defendants knowingly violated the rights of Plaintiff and Class Members. Defendants' unfair and deceptive acts were willful, wanton, and malicious.

53.     As a result of Defendants' conduct, Plaintiff and Class Members have been charged improper and exorbitant fees and thus have suffered an ascertainable loss of money or property. Plaintiff and Class Members have been harmed and injured by Defendants, entitling Plaintiff and Class Members to actual damages and/or restitution,

15

statutory damages, plus costs, interest, punitive damages, and attorney fees.

## COUNT III
## BREACH OF CONTRACT
### (Under Illinois Law)

54.     Plaintiff realleges and incorporates by reference all the foregoing paragraphs as though fully stated herein.

55.     Defendants have charged Plaintiff and the Class interest that was never disclosed in their extended warranty vehicle service contracts. Defendants' actions charging such interest constitute a breach of Defendants' service contracts with Plaintiff and the Class.

56.     Defendants have further imposed so-called "marketing fees" of 10% of the contract price, which are neither conspicuously disclosed nor clearly explained, upon Plaintiff and the Class once a consumer cancels his service contract.

57. Plaintiff and the Class never agreed to pay marketing fees upon cancellation of their contracts.

58. Defendants' marketing fees were in violation of the service contracts, which provide for only a $50 cancellation charge, at most, if a consumer cancels his service contract.

59. Defendant's actions in charging these "marketing fees" constitute a breach of Defendants' service contracts with Plaintiff and the Class.

60. In addition, there are many Class members who sold or otherwise disposed of their covered vehicles prior to the end of the warranty period but did not receive any refund at all from Defendants. All of these class members are entitled to refunds that reflect the portion of the warranty period during which they no longer owned the covered

16

vehicles. Defendants' retention of unearned premiums is unconscionable and unenforceable.

61. As a result of Defendant's wrongful conduct in billing and/or collecting contractually impermissible interest and marketing charges from Plaintiff and the Class Members, Plaintiff and the Class have suffered injury and are entitled to recover monetary damages in an amount of at least $50 million ($50,000,000).

## COUNT IV
## UNJUST ENRICHMENT
### (Under Illinois Law)

62. Plaintiff realleges and incorporates by reference all the foregoing paragraphs as though fully stated herein.

63. Because of the wrongful activities described above, including charging impermissible "interest" and "marketing fees" and retention of unearned premiums, Defendants have reaped illegal profits and unjustly enriched themselves at the expense of Plaintiff and Class Members.

64. Under principles of equity and good conscience, Defendants should not be permitted to keep this money and must be made to account to Plaintiff and Class Members for such unjust enrichment and disgorge their unlawful profits.

65. By reason of the foregoing, Plaintiff and Class Members have suffered damages and seek an order mandating disgorgement of all such ill-gotten monies.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests of this Court the following prayer for relief, on behalf of himself and the Class:

A. An order certifying the Class and appointing Plaintiff and his counsel to

represent the Class;

     B.     Monetary relief and/or equitable relief (including without limitation

restitution to Plaintiff and the Class) in an amount to be determined at trial;

     C.     Statutory damages;

     D.     Punitive damages;

     E.     Interest;

     F.     Attorneys' fees and costs of suit, including costs of notice, administration,

and expert witness fees; and

     G.     Such other legal or equitable relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiff demands trial by jury of all issues so triable.

Dated: September 16, 2009

Respectfully submitted,

_/s/Mark S. Baumkel_____

**Mark S. Baumkel**
**LAW OFFICES OF MARK S. BAUMKEL & ASSOCIATES**
30200 Telegraph Road, Suite 200
Bingham Farms, MI 48025
Tel: (248) 642-0444
Fax: (248) 642-6661
m.baumkel@p-ppclawfirm.org
*pro hac vice*

**Steven L. Wittels (SLW-8110)**
**SANFORD WITTELS & HEISLER, LLP**
950 Third Avenue, 10th Floor
New York, NY 10022
Tel: (646) 723-2947
Fax: (646) 723-2948
swittels@nydclaw.com
pending *pro hac vice* admission

18

**Michael F. Ram**
**RAM & OLSON, LLP**
555 Montogmery Street, Suite 820
San Francisco, CA 94111
Tel: (415) 433-4949
Fax: (415) 433-7311
mram@ramolson.com
*pro hac vice*

**Bryan J. Waldman**
LEVIN & PERCONTI
325 North LaSalle Street
Suite 450
Chicago, IL 60654
Tel: (312) 332-2872
Fax: (312) 332-3112
bjw@levinperconti.com

*ALL COUNSEL FOR PLAINTIFF*
*JONATHAN J. SAHIM AND THE CLASS*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **JONATHAN J. SAHIM,** Individually and on Behalf of All Other Similarly Situated Consumers, | ) ) ) | |
| Plaintiff, | ) ) | **Case No. 1:09-cv-4279** |
| vs. | ) ) ) | **Honorable Marvin E. Aspen** |
| **DEALERS WARRANTY, LLC a/k/a Mogi a/k/a FEDERAL AUTO PROTECTION, WARRANTY FINANCE, LLC,** and **BRIAN ALBERT MARINO,** | ) ) ) ) ) | **CLASS ACTION** |
| Defendants. | ) ) ) | |

## NOTICE OF FILING UNOPPOSED MOTION

To: All Defendants

Plaintiff gives notice of filing unopposed Motion For Leave to File Second Amended

Complaint to be heard before Hon. Marvin Aspen at 10:30 a.m., September 17, 2009 or such

other time as determined by the Court.

Dated: September 16, 2009


Respectfully submitted,

_/s/Mark S. Baumkel_____
**Mark S. Baumkel**
**LAW OFFICES OF MARK S. BAUMKEL & ASSOCIATES**
30200 Telegraph Road, Suite 200
Bingham Farms, MI 48025
Tel: (248) 642-0444
Fax: (248) 642-6661
m.baumkel@p-ppclawfirm.org
*pro hac vice*


*CO-COUNSEL FOR PLAINTIFF*
*JONATHAN J. SAHIM AND THE CLASS*

1