# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JONATHAN J. SAHIM
Individually and on behalf of others similarly
situated,

          Plaintiff,

    v.

DEALERS WARRANTY, LLC a/k/a Mogi
a/k/a FEDERAL AUTO PROTECTION,
WARRANTY FINANCE, LLC, and BRIAN
ALBERT MARINO

          Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 09-cv-4279

Judge Marvin E. Aspen

## DEFENDANT WARRANTY FINANCE, LLC'S
## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendant Warranty Finance, LLC ("Finance"), by its attorneys, Barnes & Thornburg LLP, submits this Memorandum in support of its Motion to Dismiss, and states as follows:

### Introduction

Plaintiff, Jonathan J. Sahim ("Sahim"), has filed a Second Amended Class Action Complaint ("Complaint" or " 2d Am. Compl.") against Finance, Dealers Warranty, LLC ("Dealers"), and Brian Albert Marino ("Marino"). All of Sahim's claims are premised on his belief that a previously undisclosed interest charge and a previously undisclosed marketing fee were deducted from a refund he received from Dealers (not Finance) after he canceled a vehicle service contract that he purchased from Dealers (not Finance). Sahim has failed to allege any factual basis for suing Finance, and the facts he does allege, along with the contract documents he failed to attach to his Complaint, show that Sahim cannot allege any factual basis for suing Finance. Finance was not a party to the vehicle service contract, did not sell the vehicle service contract to Sahim, did not extend credit to Sahim for the purchase of the vehicle service contract, was not responsible for refunding money to Sahim under the vehicle service contract, and made no misrepresentations to Sahim about the vehicle service contract or refunds under that contract.

Based on the facts alleged in the Complaint and the contract documents, all of Sahim's claims should be dismissed with prejudice. Count I, which purports to allege a claim under the

Federal Truth and Lending Act ("TILA"), should be dismissed because the relevant contract documents show that Finance did not extend "credit" to Sahim as that term is defined under TILA. Count II, which purports to allege a violation of the Illinois Consumer Fraud Act, should be dismissed because (1) Sahim, as a citizen of Virginia, does not have standing to pursue a claim under the Illinois Consumer Fraud Act, (2) a violation of the Illinois Interest Act is *not* an unfair or deceptive practice under the Consumer Fraud Act, (3) Sahim failed to allege his Consumer Fraud Act claim with the particularity required by Fed. R. Civ. P. 9(b), and (4) Sahim failed to allege an unfair or deceptive act or practice by Finance. Count III, which purports to allege a claim for breach of the vehicle service contract, should be dismissed because Finance is not a party to the vehicle service contract and was not responsible for refunds under the vehicle service contract. Finally, Count IV, which purports to allege a claim for unjust enrichment, should be dismissed because there is a specific, written contract that governs the relationship between Sahim and Finance.

Accordingly, Sahim's claims against Finance should be dismissed with prejudice.

## Facts

### I.     The allegations in Plaintiff's Complaint.

According to the Complaint, on October 19, 2007, Sahim purchased a "vehicle service contract" from Dealers for his 1994 Dodge Caravan. 2d Am. Compl. ¶ 14. Sahim failed to attach the vehicle service contract to the Complaint. Sahim does not allege that he purchased the vehicle service contract from Finance, nor does he allege that Finance is a party to the vehicle service contract. The contract price was $1,425.00 for sixty months of warranty coverage. *Id.* Sahim made a down payment of $72.00 and agreed to pay "Defendants" [1] the balance of the purchase price of the vehicle service contract in equal monthly installments of $56.38 per month over a twenty-four month period. *Id.* Sahim alleges that the vehicle service contract disclosed a cancellation fee of $50.00. *Id.*, ¶ 23.

Sahim alleges that from October 2007 until March 2009, he received billing statements from Finance and he made several monthly payments to Finance, which Sahim describes as the "Warranty Payment Processing Center" and "service provider for collection." *Id.*, ¶ 16 & 22. Sahim does not allege that he corresponded with Finance in any manner other than sending

---

[1] At various points in the Complaint, Sahim refers to all three defendants jointly under the generic rubric "Defendants."

payments to Finance and receiving monthly billing statements from Finance.

Sahim alleges that he wrote to Dealers on or about March 25, 2009 to cancel his service contract. *Id.*, ¶ 23. At the time Sahim sent his letter to Dealers, he had made seventeen monthly payments of $56.38, in addition to the $72.00 down payment, for a total of $1030.46. *Id.*, ¶ 22. He expected a refund of $576.71, which he calculated to be the *pro rata* value of the unused portion of the service contract that his 17-monthly payments covered minus the $50.00 cancelation fee. *Id.*, ¶ 23. Sahim contends that Dealers sent him a "cancelation refund" check for $258.47, which is less than Sahim expected to receive under the service contract. *Id.*, ¶ 24.

Sahim claims he contacted Dealers by telephone to request an explanation as to why the refund was less than he expected. *Id.*, ¶ 25. Sahim does not allege that he contacted Finance at any time. Sahim alleges that one of Dealers's representatives stated that the "warranty company" had lowered his refund by charging interest in the amount of $175.74 and a marketing fee in the amount of 10% of the price of the service contract, or $142.50. *Id.* Sahim does not specify the name of the "warranty company." *Id.* Sahim claims that the "Defendants" did not disclose the additional interest in the vehicle service contract. *Id.*, ¶¶ 6 & 26. Sahim admits that the 10% marketing fee was disclosed to him in a footnote, but fails to specify the particular document that contained the footnote and fails to attach the document to his Complaint. *Id.*, ¶ 6.

Finally, Sahim claims that the "Defendants" did not adequately disclose that customers who sold or otherwise disposed of their vehicles prior to the end of the term of the service contract were entitled to a *pro rata* refund. *Id.*, ¶ 27. Sahim, however, does not allege that he sold or otherwise disposed of his 1994 Dodge Caravan prior to the expiration of the term of the vehicle service contract or prior to his cancelation of the vehicle service contract.

## II.   The real facts as shown by the Vehicle Service Contract with Warranty America, LLC, the separate Purchase Plan Agreement with Finance, and the separate letter from Dealers.

Sahim fails to attach key documents referenced in the Complaint, even though they are central to his claims. Specifically, the Complaint refers to two separate contracts that Sahim independently entered into on October 19, 2009 with two separate parties (one of which is not even named as a defendant in this case). These contracts are attached hereto as Exhibits A and B. In addition, the Amended Complaint refers to a letter sent by Dealers (not Finance) to Sahim regarding a 10% marketing fee charged by Dealers (not Finance), as the seller of the vehicle

service contract. This letter (the "Dealers Letter") is attached hereto as Exhibit C.[2]

The first document referenced in the Complaint is a Vehicle Service Contract ("VSC"), which was entered into between Sahim and a company called Warranty America, LLC ("Warranty America"). *Compare* Ex. A *with* 2d Am. Compl. ¶¶ 3-4, 21-23, & 58. Warranty America is not named as a defendant in this action. The declaration page to the VSC identifies Dealers, which is named as a defendant in this action, as the "seller" of the VSC. *Id.* at D1. Notably, Finance is not a party to the VSC and is not mentioned anywhere in the VSC. The declaration page to the VSC lists the VSC's price as $1,425.00 and provides that the term of the VSC is sixty months. *Id.* The VSC provides that Sahim can cancel the VSC at any time and receive a *pro rata* refund by "sending [the VSC] with a notarized statement indicating the actual miles on your vehicle at the date of the request to *Warranty America, LLC*." *Id.* at T5 (emphasis added). The VSC also provides that "*Warranty America, LLC* is primarily liable to provide any refund under this contract." *Id.* (emphasis added).

The second document referred to in the Complaint is the Purchas Plan Agreement ("PPA"), which was entered into between Sahim and Finance. Compare Ex. B *with* 2d Am. Compl. ¶¶ 16, 21, & 22. The PPA is the only contract that Finance and Sahim entered into on October 19, 2009. The PPA states that the "Purchaser [Sahim] agrees to purchase a [VSC] from *Seller [Dealers]* that is issued by *Warranty America* ('Administrator')." Ex. B at F1 (emphasis added). The PPA provides that "Purchaser [Sahim] agrees to pay for the [VSC] pursuant to an installment payment program (the 'Program')," pursuant to which Sahim agreed to make 24 total payments of $56.38 to Finance. *Id.* The PPA states that "Purchaser [Sahim] shall have the right, at anytime, to cancel the [VSC] and, after cancellation, Purchaser shall have no obligation to make any further installment payments hereunder." *Id.* Consistent with the VSC, the PPA expressly provides that Warranty America, and not Finance, is responsible for refunding any amounts owed to Sahim in the event that the VSC is cancelled. *Id.* at F3. Specifically, the PPA provides:

> If the Contract is cancelled, WF [Finance] shall calculate the portion of the Total Price that has been earned through the date of cancellation plus all applicable late fees and other charges provided under this Agreement (collectively, the "Earned

---

[2] As discussed in the Standard section, *infra*, the Court is not bound to accept Sahim's allegations as to the effect of the documents attached to this Memorandum, but can independently examine the documents and form its own conclusions as to the proper construction and meaning to be given the material.

Amount"). In the event that Purchaser has made total payments to WF (the "Paid Amount") in excess of the Earned Amount, ***Administrator [Warranty America] shall refund*** to Purchaser the amount by which the Paid Amount exceeds the Earned Amount.

*Id.* at F3 (emphasis added).

The third document referenced in the Amended Complaint is the Dealers Letter. *Compare* Ex. C *with* 2d Am. Compl. ¶ 6. The Dealers Letter states, in a footnote:

We [Dealers] are a service provider connecting customers to underwriters and issuers. These services include notification of need, explanation of benefits, superior coverage analysis, pricing comparison and negotiation, financial transaction assistance, financing, and special services. ***A marketing service fee equal to 10% of contract value will be charged to your account if coverage does not reach full term.***

Ex. C (emphasis added). The Dealers Letter is on Dealers's letterhead, was not sent by Finance, and does not mention Finance. *Id.*

## Standard

As a general rule, a court on a Fed. R. Civ. P. 12(b)(6) motion may consider only the plaintiff's complaint. However, Fed. R. Civ. P. 10(c) provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c). Based on Rule 10(c), the Seventh Circuit has concluded that "'documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.'" *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (quoting *Wright & Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)).

In this case, the VSC, PPA, and Dealers Letter, which are attached hereto as Exhibits A through C, respectively, are all referenced in the Amended Complaint and central to Sahim's claims. Thus, the VSC, PPA, and Dealers Letter can and should be considered by the Court when deciding Finance's Motion to Dismiss. Moreover, "'[t]he court is not bound to accept [Sahim's] allegations as to the effect of the [VSC, PPA, or Dealers Letter], but can independently examine the document[s] and form its own conclusions as to the proper construction and meaning to be given the material.'" *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) (quoting 5 Wright & Miller, *Federal Practice & Procedure: Civil 2d*, § 1327 at 766 (1990)).

**Argument**

I. **Plaintiff's TILA claim (Count I) fails as a matter of law because Finance did not issue "credit" to Sahim.**

In order for TILA to apply to a transaction, there must "credit" issued to a consumer. *Kuhfeldt v. Liberty Mut. Ins. Co.*, 833 F. Supp. 632, 635 (E.D. Mich. 1993). TILA defines the term "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. 1602(e). The transaction between Sahim and Finance did not involve "credit" because Sahim never deferred the payment of debt.

Rather than defer payment of a debt, Sahim made payments under the PPA in advance of the continuation of future warranty coverage provided by the VSC and was free to cancel the VSC and the PPA at any time. *See* 2d Am. Compl. ¶¶ 4 & 22-23; Ex. B at F1; Ex. A at T5. The PPA states that "Purchaser [Sahim] shall have the right, at anytime, to cancel the [VSC] and, after cancellation, Purchaser shall have no obligation to make any further installment payments hereunder." Ex. B at F1. The PPA also provides that Sahim was entitled to receive a refund on a *pro rata* basis from Warranty America for the payments he paid for future warranty coverage. *Id.* at F3 ("In the event that Purchaser has made total payments to WF (the "Paid Amount") in excess of the Earned Amount, ***Administrator [Warranty America] shall refund*** to Purchaser the amount by which the Paid Amount exceeds the Earned Amount."). Consistent with the PPA, the VSC also provides that Sahim can cancel the VSC at anytime and receive a *pro rata* refund. Ex. A at T5.

Federal courts have consistently held that a transaction does not involve "credit" under TILA where, as in this case, a consumer makes advance payments for future services and/or was free to cancel the transaction at any time. *Kuhfeldt*, 833 F. Supp. at 635 ("Where there is no obligation to continue making payments, there is no credit and TILA is inapplicable."); *Munson v. Orrin E. Thompson Homes, Inc.*, 395 F. Supp. 152, 157 (D. Minn. 1974) ("Unless there exists an underlying debt and an obligation to make full and complete payment, a 'credit' situation does not arise."); *Gerlach v. Allstate Ins. Co.*, 338 F. Supp. 642, 647 (S.D. Fla. 1972) (no credit relationship where insured had no obligation to continue making payments). Because Sahim's payments were made toward future coverage under the VSC and he was free to cancel the VSC and the PPA at any time, Sahim never incurred debt and, therefore, never received "credit" from Finance.

Accordingly, Sahim's TILA claim against Finance should be dismissed with prejudice.

II. **Sahim's breach of contract claim (Count III) against Finance, which is based on purported breaches of the VSC, fails as a matter of law.**

A. **Finance is not a party to the VSC and is not responsible for refunds under the VSC.**

Sahim's breach of contract claim is premised entirely on the purported failure of the "Defendants" to provide Sahim a refund in accordance with the terms of the VSC, a contact to which Finance is not a party. Specifically, Sahim claims that the "Defendants" breached the "vehicle service contract" by deducting certain interest and marketing fees from the amount of Sahim's "refund" upon cancellation of the service contract. 2d Am. Compl. ¶¶ 23-26, 55-60. Sahim also claims that the "Defendants" breached service contracts by failing to "refund" premiums to certain class members that sold their vehicles prior to the expiration of the service contracts. *Id.*, ¶ 60. Sahim's breach of contract claim as alleged against Finance fails for at least three fundamental reasons: (1) Finance is not a party to the VSC, which is the only "service contract" at issue; (2) Finance is not responsible for refunds under the VSC and PPA; and (3) Sahim alleges that Dealers, and not Finance, provided Sahim with an incorrect refund.

Sahim does not allege that Finance is a party to the VSC, nor could he. *See* Ex. A. The VSC identifies only Dealers (as the seller) and Warranty America (as the administrator), and does not identify Finance. *Id.* at D1 & T1. Finance is not even mentioned in the VSC. Finance cannot breach a contract to which it is not a party.

Moreover, Finance is not responsible for refunds under the VSC. Rather, the VSC provides that "***Warranty America, LLC*** is primarily liable to provide any refund under this contract." *Id.* at T5. In addition, consistent with the VSC, the PPA expressly provides that Warranty America, and not Finance, is responsible for refunding any amounts owed to Sahim in the event that the VSC is cancelled. Ex. B at F3.

Finally, Sahim alleges that Dealers, and not Finance, sent Plaintiff the refund check for the incorrect amount. Finance cannot be held liable for Dealers's actions.

Accordingly, Sahim's breach of contract claim, as alleged against Finance, should be dismissed with prejudice.

B. **Sahim does not allege that he sold his 1994 Dodge Caravan prior to the expiration of the VSC.**

Sahim's breach of contract claim is based, in part, on his allegation that "Defendants" breached their service contracts by failing to "refund" premiums to "Class members" who sold

their vehicles prior to the expiration of the service contracts. 2d Am. Compl. ¶ 60. Sahim, however, fails to allege that he personally sold his 1994 Dodge Caravan prior to the expiration of the VSC. Without this essential fact, Sahim cannot claim that any defendant (including Finance) breached a contract for failing to provide a refund that Sahim, who apparently did not sell his 1994 Dodge Caravan prior the expiration or cancelation of the VSC, was not entitled to receive. Nor can he represent a class of plaintiffs on this theory.

Accordingly, to the extent that Sahim's breach of contact claim against Finance is not dismissed in its entirety, the Court should at a minimum dismiss the portion of Sahim's breach of contact claim concerning his purported entitlement to a refund based on the sale of his vehicle prior to the expiration or cancelation of the VSC.

## III. Sahim's Illinois Consumer Fraud Act claim (Count II) fails as a matter of law.

### A. Sahim, as a citizen of Virginia, does not have standing to pursue a claim under the Illinois Consumer Fraud Act.

Sahim, as a Virginia citizen, does not have standing to bring a claim under the Illinois Consumer Fraud Act. The Illinois Consumer Fraud Act generally does not have extra-territorial effect. *See Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 184-185 (Ill. 2005) (holding that the out-of-state plaintiffs had "no cognizable cause of action under the [Illinois] Consumer Fraud Act"). In *Avery*, the Court held that "the General Assembly did not intend the Consumer Fraud Act to apply to fraudulent transactions which take place outside Illinois." *Id.* at 184. Rather, a plaintiff may pursue a claim under the Illinois Consumer Fraud Act only "if the circumstances that relate to the disputed transaction occur ***primarily and substantially*** in Illinois." *Id.* at 187 (emphasis added).

Here, the Amended Complaint is completely devoid of any allegations showing that the circumstances related to the transactions at issue occurred "primarily and substantially in Illinois." Indeed, the allegations show the opposite – the circumstances related to the disputed transactions occurred outside of Illinois. Any representations that were made by any of the Defendants to Sahim, a citizen of Virginia (2d Am. Compl. ¶ 14), were received outside of Illinois and any damages alleged by Sahim were incurred outside of Illinois. *See, e.g., Morrison v. YTB Int'l, Inc.*, __ F. Supp. 2d __, Civil Nos. 08-565-GPM, 08-579-GPM, 2009 WL 2244471, *4 (S.D. Ill. June 5, 2009) (dismissing Illinois Consumer Fraud Act claims by non-Illinois plaintiffs because "any representations that were made to the non-Illinois Plaintiffs by Defendants doubtless were received outside Illinois, and the damages of those Plaintiffs were

incurred outside Illinois"); *see also In re Sears, Roebuck & Co., Tools & Mktg. Practices Litig.*, No. MDL-1703, 2005 WL 3077606, *2 (N.D. Ill. Nov. 14, 2005) (dismissing Illinois Consumer Fraud Act claims by non-Illinois plaintiffs because "[t]here are no allegations that any plaintiff read any misrepresentation in Illinois, purchased any tools in Illinois, or had any contact with a Sears agent in Illinois").

The reasoning of *Morrison* and *Sears* is particularly applicable in this case because it is evident from the allegations in the Complaint that any communication related to the sale of the VSC, Sahim's cancelation of the VSC, the refund due under the VSC, and marketing fees allegedly deducted from the refund occurred with Dealers and/or Warranty America, both of which are based outside Illinois. Sahim alleges that Dealers, which is a Missouri-based company, solicited Sahim and sold the VSC to him. 2d Am. Compl. ¶ 2-3, 7, 14, 15, 19, 20, 21 (identifying Dealers, and not Finance, as the party that sold the VSC to Sahim); *see also* Ex. A at D1 & Ex. B at F1 (same). Sahim alleges that he contacted Dealers, and not Finance, to cancel the VSC. 2d Am. Compl. ¶ 23. Sahim alleges that Dealers, and not Finance, sent a cancelation refund check to Sahim for the incorrect amount. 2d Am. Compl. ¶¶ 24. Sahim alleges that he contacted Dealers, and not Finance, to complain about the cancelation refund check and that Dealers, and not Finance, advised Sahim that the "warranty company" had charged Sahim additional interest and a marketing fee. 2d. Am. Compl. ¶¶ 5, 25.

In addition, the documents that Sahim failed to attach to his Complaint conclusively show that any relevant communications occurred outside of Illinois. The Dealers Letter, which is the only document that mentions a 10% marketing fee, was sent by Dealers, from Missouri, to Sahim's residence in Virginia. Ex. C. Both the VSC and the PPA provide that Warranty America, which is presumably a Colorado-based company, was responsible for canceling the VSC and providing Sahim a refund under the VSC. *See* Ex. A at T1 & T5 & Ex. B at F3. Indeed, the VSC expressly provides that Sahim may cancel the VSC and request a refund by sending the notice of cancelation and request to "Warranty America, LLC at 5695 Yukon Street, Arvada, *Colorado*, 80002." Ex. A at T5 (emphasis added).

Finally, Sahim's allegation that Finance's headquarters are located in Illinois (Compl. ¶ 16) is not enough to provide standing under the Illinois Consumer Fraud Act. *Avery* specifically held that "where the only connection with Illinois is the headquarters of the defendant or the fact that a scheme 'emanated' from Illinois, the Consumer Fraud Act 'does not apply to the claims of

the non-Illinois plaintiffs.'" 216 Ill. 2d at 189-90 (quoting *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 340 & n. 10 (N.D. Ill. 1997)).

Accordingly, Sahim's Illinois Consumer Fraud Act claim should be dismissed with prejudice.

### B. Sahim improperly claims that a violation of the Illinois Interest Act is an unfair or deceptive practice under the Consumer Fraud Act.

Sahim's Illinois Consumer Fraud Act claim should also be dismissed for the separate and independent reason that it is based on an alleged violation of the Illinois Interest Act, 815 ILCS 205/.01 *et seq.* 2d Am. Compl. ¶¶ 48 & 50. Section 2Z of the Illinois Consumer Fraud Act specifically enumerates the statutes which if violated may constitute an unlawful practice under the Illinois Consumer Fraud Act. 815 ILCS 505/2Z. The Illinois Interest Act is not among the statutes listed in Section 2Z. *Id.* According to the maxim *expressio unius est exclusio alterius,* the enumeration of certain things in a statute implies the exclusion of all other things. *People ex. rel. Daley v. Grady*, 192 Ill. App. 3d 330, 333 (1st Dist. 1989); *see also McCabe v. Crawford & Co.*, 210 F.R.D. 631, 640 (N.D. Ill. 2002). Based on this maxim, the violation of any Illinois act omitted from Section 2Z cannot be considered a violation of the Illinois Consumer Fraud Act. *Daley*, 192 Ill. App. 3d at 333 (affirming dismissal of Consumer Fraud Act claim based on the Real Estate License Act because it was not enumerated in Section 2Z); *McCabe*, 210 F.R.D. at 640 (dismissing Consumer Fraud Act claim base on section 6-305.2(f) of the Illinois Vehicle Code because it was not enumerated in Section 2Z). Because the Illinois Interest Act is not enumerated in Section 2Z, its violation cannot be considered an unlawful practice under the Consumer Fraud Act.

Accordingly, Sahim's Illinois Consumer Fraud Claim should be dismissed with prejudice.

### C. Sahim's allegations fail to state a claim against Finance under the Consumer Fraud Act.

Sahim's Consumer Fraud Act claim should also be dismissed for the separate and independent reason that it is not alleged with sufficient particularity under Rule 9(b). A complaint alleging a violation of the Consumer Fraud Act must be pleaded with the same particularity and specificity as that required by Rule 9(b). *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 883 (7th Cir. 2005); *see also Lantz v. American Honda Motor Co., Inc.*, No. 06 C 5932, 2007 WL 1424614, *9 (N.D. Ill. May 14, 2007). A plaintiff must plead the who, what, when,

and where of the fraud sufficient to reasonably notify the defendant of its purported role in the scheme. *Id.*[3]

Sahim alleges, without any specificity, that "Defendants knowingly and fraudulently misrepresented, concealed, suppressed, or omitted material facts in their dealings with Plaintiff and Class Members in violation of 815 ILCS § 505/2." 2d Am. Compl. ¶ 49; *see also id.*, ¶ 47 (alleging that Defendants "representations and concealments" violated the Consumer Fraud Act). Sahim fails to identify a single misrepresentation made specifically by Finance to Sahim, let alone who at Finance made the representation or when the representation was made. Likewise, to the extent that Sahim is relying on a fraud by omission theory, Sahim fails to specify a single statement made specifically by Finance to Sahim that was allegedly misleading due to an omission of a material fact, much less who at Finance made the statement or when the statement was made.

Moreover, Sahim's Consumer Fraud Act claim improperly lumps all the defendants together under the generic reference of "Defendants" and does not specify which specific defendant was involved in which activity. *See* 2d Am. Compl. ¶¶ 47, 49, & 51. "A complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, generally is insufficient." *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (quotations omitted; affirming dismissal under Rule 9(b) because "the complaint lumps all the defendants together and does not specify who was involved in what activity"); *see also Daniels v. Bursey*, No. 03 C 1550, 2003 U.S. Dist. LEXIS 15488, *17 (N.D. Ill. Sep. 3, 2003) ("[P]laintiffs may not lump the defendants together in a group; rather, they must specify each defendant's participation in the alleged fraud."). Sahim's lumping of the Defendants together in this case is particularly problematic because the VSC, PPA, and Dealers Letter, as well as the allegations in Plaintiff's Complaint, conclusively demonstrate that Finance and Dealers had very different roles in the transaction and that Finance never communicated with Sahim. *See* 2d Am. Compl. ¶ 2-3, 7, 14,

---

[3] Finance recognizes that the Seventh Circuit recently has held that Rule 9(b) does not apply to claims under the Consumer Fraud Act that are based on "unfair" conduct. *See Windy City Metal Fabricators & Supply Inc. v. Midwest Inc. Co.*, 536 F.3d 663, 670 (7th Cir. 2008). However, *Windy City*'s holding does not apply in this case because Sahim's claim is based, at least in part, on Defendants' purported misrepresentations. *See, e.g., Pirelli Armstrong Tire Corp. v. Walgreen Co.*, No. 09 C 2046, 2009 WL 2777995, *4 n. 2 (N.D. Ill. Aug. 31, 2009) ("While the 7th Circuit has recently departed from requiring all claims under the ICFA to meet Rule 9(b)'s heightened pleading standards, it has only done so for claims of unfair business practices; claims sounding in fraud or deception are still required to meet the heightened pleading requirements of Rule 9(b).").

15, 19, 20, 21 (identifying Dealers, and not Finance, as the party that sold the VSC to Sahim and that solicits customers in general); *see also* Ex. A at D1 & Ex. B at F1 (identifying Dealers, and not Finance, as the seller of the VSC).

Accordingly, Sahim's Consumer Fraud Act claim should be dismissed with prejudice. *See Ellis v. Allstate Ins. Co.*, 479 F. Supp. 2d 782, 791 (N.D. Ill. 2006) (dismissing Consumer Fraud Act claim for failure to plead violation with particularity); *Lantz*, 2007 WL 1424614, *9-*10 (same).

### D. Sahim fails to allege any relevant practice or act by Finance.

A fundamental element of pleading any claim under Consumer Fraud Act is the identification of an unfair or deceptive act or practice committed by the defendant. *See Robinson v. Toyata Motor Credit Corp.*, 201 Ill. 2d 403, 416-17 (2002). Sahim's Consumer Fraud Act claim is not based on any act or practice by Finance, let alone an unfair or deceptive practice or act. Rather, his claim is based on his belief that a previously undisclosed interest charge and a previously undisclosed marketing fee were deducted from a refund he received from Dealers (not Finance) after he canceled a VSC that he purchased from Dealers (not Finance). 2d Am. Compl. ¶¶ 48-49 & 52. As noted in Section II.A, *supra*: (1) Finance is not a party to the VSC; (2) Finance is not responsible for refunds under the VSC; and (3) Sahim alleges that Dealers, and not Finance, provided Sahim with an incorrect refund. *See* 2d Am. Compl. ¶ 24; Ex. A generally & at T5. Moreover, all communications regarding the refund and the purported interest charge and marketing fee were between Sahim and Dealers (not Finance). *See* 2d Am. Compl. ¶¶ 6 & 24-24; Ex. C. Because Sahim failed to allege any deceptive practice or act committed by Finance, Sahim's Consumer Fraud Act Claim should be dismissed.

## IV. Sahim's unjust enrichment (Count IV) claim fails as a matter of law.

"The theory of unjust enrichment is based on a contract implied in law and, therefore, does not apply where there is a specific contract that governs the relationship of the parties." *Perez v. Citicorp Mortgage, Inc.*, 301 Ill. App. 3d 413, 425 (1st Dist. 1998); *see also Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 689 (7th Cir. 2004) ("When two parties' relationship is governed by contract, they may not bring a claim for unjust enrichment unless the claim falls outside the contract."). In this case, there is a specific, written contract, the PPA, that governs the relationship between Sahim and Finance. *See* Ex. B. Because there is specific contract that governs the relationship between Sahim and Finance, Sahim cannot allege a claim

for unjust enrichment against Finance as a matter of law and that claim must be dismissed with prejudice. *See, e.g., Citadel Group Ltd. v. Sky Lakes Medical Ctr.*, No. 06 C 6162, 2008 U.S. Dist. LEXIS 35306, *21-22 (N.D. Ill. Apr. 30, 2008) (dismissing unjust enrichment claim).

## Conclusion

For the foregoing reasons, Finance's Motion to Dismiss should be granted, and all of the claims against Finance should be dismissed with prejudice.

Respectfully submitted,

Warranty Finance, LLC

By:    s/ Brad E. Rago
One of Its Attorneys

William McErlean (ARDC # 3122871)
Brad E. Rago (ARDC # 6275740)
Barnes & Thornburg LLP
One North Wacker Drive
Suite 4400
Chicago, IL 60606-2809
(312) 357-1313

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a copy of the foregoing Memorandum in Support of Motion to Dismiss was served on the following via the Court's CM/ECF system on this 1st day of October 2009:

Bryan J. Waldman
Levin & Perconti
325 North LaSalle Street
Suite 450
Chicago, Illinois 60654
bjw@levinperconti.com

Mark S. Baumkel
Mark S. Baumkel & Associates
30200 Telegraph Rd., Ste. 200
Bingham Farms , MI
baumkelm@aol.com

Michael F. Ram
Ram & Olson LLP
555 Montgomery Street
Suite 820
San Francisco , CA 94111
mram@ramolson.com

Robert Radasevich
Emily Mulder Milman
Neal, Gerber & Eisenberg
Two North LaSalle Street
Suite 1700
Chicago , IL 60602
rradasevich@ngelaw.com
emilman@ngelaw.com

_____ s/ Brad E. Rago _____

**EXHIBIT A**

# DECLARATION PAGE ➤

## CONTRACT #: PTOF495616

---

### CONTRACT HOLDER INFORMATION

Jonathan Sahim
3516 Barry St
Virgina Beach, VA 23452-4304
757-463-1024

---

### SELLER INFORMATION

DEALERS WARRANTY, LLC
745 Friedens Road
St. Charles, MO 63303
866-338-7877

---

### VEHICLE INFORMATION

VIN: 2B4GH55R3RR737303
Year: 1994      Make: DODGE          Model: CARAVAN LE
Vehicle Purchase Price:  N/A

---

### SERVICE CONTRACT INFORMATION

Coverage: Basic Powertrain

| | |
|---|---|
| Term Months: 60 | Term Miles: 100,000 |
| Sale Date:  10/19/2007 | Expiration Date:  10/18/2012 |
| Sale Odometer:  139,760 | Expiration Odometer:  239,760 |
| Service Contract Price:$1425.00 | Vehicle Class: 1 |
| Deductible: $ 100 | Plan Code: WABASIC |
| Additional Options: | Surcharges: |

Lienholder: Wfc  INSTALLMENT AGREEMENT

---

- Coverage is listed in YOUR contract and is not subject to any verbal representations made by the seller of this contract.
- This Service Contract may run concurrent with and is secondary to any applicable Manufacturer's Warranty.
- **THIS SERVICE CONTRACT IS NEITHER AN INSURANCE POLICY NOR A SELLERS WARRANTY.**
- This Service Contract applies only to the above described vehicles

D1                                                                          DSTD03



**WARRANTY AMERICA, LLC**

**(In Texas dba WA Administrative Services, LLC)**
5695 Yukon Street ~ Arvada ~ Colorado ~ 80002
(800) 531-1925 ~ Fax: (303) 420-7543
**Part Two of Two Parts – Auto/ Truck Service Contract Coverage Pages**

**TERMS AND CONDITIONS**

## DEFINITIONS

| | |
|---|---|
| **Administrator** | refers to Warranty America, LLC |
| **Contract** | refers to this Vehicle Service Contract, which You purchased from Us to protect Your Vehicle. |
| **Commercial Use** | means any vehicle used for business purposes. Vehicles that are used in excess of manufacturer's g.v.w.r. for excessive hauling and pulling or are in excess of 1-ton classification are excluded from coverage hereunder. Tow trucks, taxis, and police vehicles are excluded from coverage. |
| | refers to this Vehicle Service Contract, which You purchased from Us to protect Your Vehicle. |
| **Coverage** | refers to the component protection you have chosen, as shown on the Contract. |
| **Deductible** | refers to the Deductible type and amount you will need to pay, as shown on the Contract, for each repair visit. |
| **Failure** | Failure is defined as a Failure of a defective part or faulty workmanship as supplied by the Manufacturer or Dealer, but does not include gradual reduction in operating performance due to wear or tear or damage resulting from Failure of non-covered parts. |
| **We, Us, Our** | refers to the entity that is obligated to perform under this Contract, as indicated on the Contract. |
| **You, Your** | refers to the Contract holder named on the Contract or the person to whom this Contract was properly transferred. |
| **Vehicle** | refers to the Vehicle, which is described on the Contract, which cannot be used for rental, emergency or for-hire purposes. |
| **Waiting Period** | refers to claims not being valid/paid within the first 30 days and 1,000 miles from the date and odometer reading on the Contract. |

**CONTRACT PERIOD:** This Contract begins upon the Contract sale date and starting odometer shown above and will continue for the term purchased. Expiration will be calculated by adding the number of years to the Contract start date and the term miles to the starting odometer.

**FAILURE OF COVERED PARTS:** We will pay or reimburse You for reasonable costs to repair or replace any Failure of a part included in Your Coverage. Replacement parts may be new, remanufactured or replacement parts of like kind and quality.

**TERRITORY:** This Contract is limited to Failures, which occur, and repairs that are made, within the United States of America and Canada.

**LIMIT OF LIABILITY:**

a) The Maximum limit of liability of this contract, all claims paid and payable, shall be the lesser of a) $5000; or b) the actual cash value (ACV) of the vehicle at the time of repair as determined by the NADA trade value whichever is less. If a claim on the engine or the transmission exceeds the actual cash value of the vehicle and the Administrator elects to pay the actual cash value of the vehicle, the vehicle becomes the property of the Administrator for salvage. You must be able to provide free and clear title prior to Administrator paying the ACV.

b) The limit of liability per covered component is as follows: $3000 in Engine, Turbo/Supercharger claims. $2000 in Transmission and Transfer Unit claims. $500 in Water Pump claims. $1500 in Differential claims.

**OUR RIGHT TO RECOVERY:** If We pay anything under this Contract and You have a right to recover from another party, Your rights will become Our rights up to the amount We paid. You will do whatever is necessary to enable Us to enforce these rights.

**TRANSFER RIGHTS:** This Contract is for the benefit of the original Contract holder and is transferable subject to a transfer fee providing: You must submit the following:

a)   Transfer application (Available from Administrator).

b)   Bill of sale showing sale date and mileage at time of sale.

c)   $50.00 Transfer fee made payable to the Administrator within thirty (30) days of the transfer of Vehicle ownership.

**MAINTENANCE REQUIREMENTS:** You must maintain Your Vehicle according to the manufacturer's recommendations as outlined in the owner's manual. Proper documented and verifiable receipts for oil and oil filter changes will be required in the event of a claim. Handwritten receipts will not be accepted.

**\*\*NOTE:** *Your owner's manual has separate required maintenance schedules for "normal" and "more severe" operating conditions. You are required to follow the maintenance schedule that applies to Your conditions.*

**DEDUCTIBLE:** In the event of a Failure covered by this Contract, You will be required to pay a one-hundred ($100) Deductible per repair visit.

# COVERAGE

**ENGINE** (Gas or Diesel): All internally lubricated parts including: pistons, piston rings, piston pins, crankshaft and main bearings, connecting rods and bearings, camshaft and bearings, timing chain or belt, timing gears, intake and exhaust valves, valve springs, valve guides, oil pump, push rods, rocker arms, rocker arm shafts, hydraulic and solid lifters;. The engine block and heads are also covered if damage is caused by a Failure of any of the above covered components.

**WATER PUMP:** Impeller shaft; bearings; bushings and housing.

**TURBO/SUPERCHARGER:** Internal parts; vanes; shafts; bearings and housing if damage is caused by a Failure of a covered component.

**TRANSMISSION:** (Automatic or Standard): All internal parts; torque converter; vacuum modulator and mounts. Does not include clutch assembly; pressure plate; flywheel; throw out bearing; worn synchronizers; cables or electrical items. The case is also covered if damage is caused by a Failure of any of the above covered items.

**TRANSFER UNIT (4x4):** Internal parts including: bearings, bushings, sprockets, chains, sleeves and gears (excluding electrical items). The transfer case is also covered if damage is caused by a Failure of any of the above covered components.

**DRIVE AXLE.** (a) Differential housing, transaxle housing & final drive housing, ONLY if damaged by the failure of a lubricated internal part. (b) All lubricated internal parts contained within the housings. (c) Axle shafts;

**SEALS AND GASKETS:** Seals and Gaskets are replaced only as part of repair or replacement of the above covered components. Leaking gaskets or seals are not covered.

# BENEFITS

The following additional benefits are provided with your Contract, except where prohibited by law. Your Contract provides you with an emergency road service program when needed 24 hours a day, 365 days a year. Dispatch service will be provided by "Signature's Nationwide Auto Club", a GE Financial Assurance Company. When your vehicle becomes disabled, just call 866-222-7869 and a service vehicle will be dispatched to you. Simply sign for the service and go on your way. There is a combined $400 limit for auto club benefits for the term of your Agreement.

- **TOWING SERVICE** – When your vehicle cannot be started or driven, or is in an accident, you are covered up to fifty dollars ($50) per occurrence. **EMERGENCY TIRE SERVICE** – Whenever you have a flat or damaged tire, you are covered up to a maximum of thirty-five dollars ($35) per occurrence for the service provider to change the inflated spare from mount to wheel. **LOCKOUT SERVICE** – Misplaced, broke, or accidentally locked your keys in the vehicle? Dispatch will provide locksmith or emergency vehicle service to assist you. Independent Service Providers' vehicles are equipped to provide locksmith service. This service is limited to fifty dollars ($50) per occurrence. **BATTERY SERVICE** – In the event the battery for your vehicle fails, battery services will be provided to a maximum of thirty-five dollars ($35) per occurrence. Independent Service Providers' vehicles are ALL equipped to boost batteries as well as perform minor adjustments to batteries, starters, and alternators. **FUEL DELIVERY SERVICE** – *At Your Service* will deliver oil, fuel, or water to the site of the member. The member is responsible for the

cost of the fuel. In the event that local state regulations prohibit the delivery of flammable materials (i.e. gas), *At Your Service* will tow your vehicle to the nearest gas station within the limits of your towing coverage. These delivery services are limited to thirty-five dollars ($35) per occurrence. **WINCHING** - Winching services will provide winching service within 100 feet of the roadside (excludes off-road driving). Winching services are limited to thirty-five dollars ($35) per occurrence.

- **CAR RENTAL REIMBURSEMENT:** Should the Contract Holder's Vehicle become inoperable and have to remain overnight for repair at the Dealership or Authorized Repair Facility, Administrator agrees, in the event of a Failure of a covered component, to reimburse the Contract Holder for rental car transportation (except where prohibited by law). Such expense shall be limited to twenty dollars ($20) per calendar day and not to exceed one hundred dollars ($100) per occurrence. In computing the amount due under this rental Coverage, only actual factory manual repair time on the Vehicle is covered. Example 1 to *8 hours = 1* day; *8.1* to *16 hours* = 2 days; *16.1* to 24 *hours* = 3 days; 24.1 to 32 *hours* = 4 days, 32.1 to 40 *hours = 5* days. Car rental *benefit* will not be *extended* to *include downtime waiting* for parts or other delays beyond control of the Dealer or Authorized Repair Facility.

- **TOWING ASSISTANCE:** When towing is necessary as a result of the failure of a covered component and the Vehicle is towed to the nearest authorized service facility, You will be reimbursed up to $50.00.

## WHAT TO DO IN THE EVENT OF A FAILURE

a. Use all reasonable means to protect the vehicle from further damage. This may require you to stop the vehicle, turn off the engine, and have the vehicle towed.

b. Present this Contract to the Repair Facility, call **Warranty America, LLC**, toll free at **1-800-531-1925**, and fax any required maintenance receipts. Warranty America, LLC, can be reached through the mail at 5695 Yukon Street, Arvada, CO 80002.

c. Prior to proceeding with repairs, ensure the Repair Facility calls Warranty America, LLC, with an estimate of repairs and receives an authorization number from Warranty America, LLC.

d. Warranty America, LLC, reserves the right to inspect any Breakdown prior to authorization.

e. The Claims Department of Warranty America, LLC, is responsible for the performance of Provider under this Contract.

f. In-home service is not provided under this Contract. Any payment of the costs of transporting the vehicle for service is provided under this Contract exclusively pursuant to the terms and conditions.

g. The Contract Holder is responsible for paying a $100 deductible for each visit to the Repair Facility.

h. Reimbursement for emergency repairs performed outside of normal business hours can be obtained by the Contract Holder only if he/she follows the above procedures on the first business day after such emergency repairs are performed.

**(The max labor rate that will be paid on all authorized repairs will be $75.00 per hour.)**

## CANCELLATION OF VEHICLE SERVICE CONTRACT

The Contract Holder may cancel this Contract by sending this Contract with a notarized statement indicating the actual miles on your vehicle at the date of the request to Warranty America, LLC, at 5695 Yukon Street, Arvada, Colorado, 80002. The Contract Holder may cancel this Contract within sixty (60) days of the Contract Purchase Date, if no claim has been made, and receive a full refund of the Total Contract Purchase Price, less claims paid. The Contract Holder may cancel this Contract at any other time and receive a pro rata refund of the Total Contract Purchase Price based on the greater of the days in force or the miles driven compared to the Total Contract Term, less the applicable cancellation fee and claims paid. All cancellations for contracts that have been financed will be paid to the Participating Lender, unless the contract has been paid in full by the customer. The Term of this Contract for cancellation purposes will be based on the date of purchase of the vehicle and the vehicle mileage on such date. Warranty America, LLC, is primarily liable to provide any refund under this Contract. If this contract was purchased in **Illinois**, the cancellation fee shall be ten percent of the service contract price not to exceed $50.00.If this Contract was purchased in **Arizona, Georgia** or **North Carolina**, the refund will be issued on the above-mentioned pro rata basis, whenever it is canceled. If this contract was purchased in **South Carolina**, the contract may be returned within (20) days from the date issued to the customer and receive a refund of the full purchase price, less claims paid. In addition, a ten percent penalty per month shall be added to a refund that is not paid within (45) days after request was made. If this Contract was purchased in **Alabama, Illinois, Nevada, Texas** or **Wyoming**, a ten percent (10%) penalty per month shall be added to a refund that is not made within forty-five (45) days of return of the Contract to Warranty America, LLC  If this Contract was purchased in **New York** or **Washington**, said penalty shall be added to a refund not made within thirty (30) days of return of the Contract to Warranty America, LLC ; The applicable cancellation fee shall be $50, except: if this Contract was purchased in **Alabama**, the applicable cancellation fee shall be $25 and will not be assessed if the Contract Holder is entitled to a full refund hereunder; if this Contract was purchased in **Georgia** or **Missouri**, a cancellation fee shall not be assessed; if this Contract was purchased in **Nevada** and it is canceled within twenty (20) days after the Contract Purchase Date, there shall be no applicable cancellation fee; if this Contract was purchased in **North Carolina** customer may cancel at any time and receive a pro rata refund less any claims paid on the contract and a reasonable cancellation fee not to exceed ten percent (10%) of the refund issued hereunder; if this Contract was purchased in **Washington**, the applicable cancellation fee shall be $25 if the Contract is canceled ten (10) or more days after the Contract Purchase Date (if the Contract is canceled before that time, there shall be no applicable cancellation fee). Refunds issued hereunder shall be issued less the value of any services received by the Contract Holder (including claims paid), except: if this Contract was purchased in **Alabama** or **Illinois**, such subtraction of the value of any services received by the Contract Holder shall apply only to cancellations not fully refunded; if this Contract was purchased in **Arizona, Nevada and Wisconsin** such subtraction of any services received by the Contract Holder shall never apply; If this contract was purchased in **Wyoming** cancellation refunds made to the Participating Lender will be made payable to the Participating Lender and the contract holder.

## EXCLUSIONS

*Parts not listed are not covered.*

*This Vehicle Service Contract Provides NO Coverage or Benefits for the following:*

A. FAILURE OF A COVERED COMPONENT OCCURRING WITHIN THE FIRST THIRTY (30) DAYS AND *1,000* MILES AFTER THE START DATE WILL NOT BE COVERED.

B. OIL CONSUMPTION, WORN OUT PARTS, AND DIMINISHED PERFORMANCE INCLUDING THAT RESULTING FROM A GRADUAL REDUCTION IN OPERATING PERFORMANCE DUE TO NORMAL WEAR AND TEAR SUCH AS TO GUIDES, VALVES, RINGS, AND TRANSMISSION CLUTCH PACK, DISCS AND BANDS IS NOT COVERED.

C. DIESEL ENGINES MANUFACTURED PRIOR TO 1990, ROTARY ENGINES, 4100 GM ENGINES OR ENGINES USED IN COMMERCIAL VEHICLES ARE EXCLUDED.

D. THE FOLLOWING PARTS: CARBURETOR; BATTERY; BATTERY/BATTERY PACK ON HYBRID VEHICLES; SHOCK ABSORBERS; MANUAL TRANSMISSION CLUTCH ASSEMBLY; FRICTION CLUTCH DISC AND PRESSURE PLATE; THROWOUT BEARING; MANUAL AND HYDRAULIC LINKAGES; DISTRIBUTOR CAP AND ROTOR; SAFETY RESTRAINT SYSTEMS (INCLUDING AIR BAGS); GLASS; LENSES; SEALED BEAMS; LIGHT BULBS; BRAKE HARDWARE; ALL EXHAUST AND EMISSION COMPONENTS EXCEPT THOSE SPECIFICALLY LISTED UNDER THE COVERAGE SECTION OF THIS CONTRACT; WEATHER STRIPS; ALL TRIM, MOLDINGS, HANDLES, KNOBS OR DIALS; BRIGHT METAL; CHROME; UPHOLSTERY AND CARPET; PAINT; OUTSIDE ORNAMENTATION; BUMPERS; BODY SHEET METAL AND PANELS; TIRES AND WHEELS/RIMS; GPS NAVIGATION SYSTEMS; PHONE SYSTEMS; TV/VIDEO/ENTERTAINMENT SYSTEMS AND INTERNET ACCESS SYSTEMS.

E. MAINTENANCE SERVICES AND PARTS DESCRIBED IN YOUR VEHICLE'S OWNER'S MANUAL AS SUPPLIED BY THE MANUFACTURER AND OTHER NORMAL MAINTENANCE SERVICES AND PARTS INCLUDING, BUT NOT LIMITED TO: ALIGNMENTS; WHEEL BALANCING; TUNE-UPS; SPARK PLUGS AND SPARK PLUG WIRES; GLOW PLUGS; HOSES; DRIVE BELTS; BRAKE PADS, LININGS, SHOES, DRUMS AND ROTORS; WIPER BLADES.

F. SHOP SUPPLY CHARGES; EPA DISPOSAL FEES; SPECIAL ORDER PARTS SHIPPING *COST*; PARTS LOCATOR RESEARCH FEE; STORAGE FEES; FILTERS, LUBRICANTS, COOLANTS, FLUIDS AND REFRIGERANTS EXCEPT WHEN REPLACEMENT *IS* REQUIRED DUE *TO* A COVERED FAILURE.

G. ANY COMPONENT NOT COVERED BY THE VEHICLE MANUFACTURER FOR THE FULL TERM OF THE VEHICLE WARRANTY IS EXCLUDED.

H. ANY FAILURE RESULTING FROM COLLISION; INTERNAL OR EXTERNAL FIRE; THEFT; VANDALISM; RIOT; EXPLOSION; LIGHTNING; EARTHQUAKE; FREEZING; RUST OR CORROSION; WINDSTORM; HAIL; WATER OR FLOOD; ACTS OF GOD; ACTS OF WAR; ACTS OF

TERRORISM; SALT; ENVIRONMENTAL DAMAGE; CONTAMINATION OR LOSS OF FLUIDS, FUELS, COOLANTS OR LUBRICANTS; ABUSE; NEGLIGENCE; LACK OF NORMAL MAINTENANCE REQUIRED BY THE MANUFACTURER'S MAINTENANCE SCHEDULE FOR YOUR VEHICLE; IMPROPER SERVICING AFTER THE EFFECTIVE DATE OF THIS CONTRACT; SLUDGE BUILD-UP OR FAILURE *TO* MAINTAIN PROPER LEVELS OF LUBRICANTS AND/OR COOLANTS; NOT PROTECTING THE VEHICLE FROM FURTHER DAMAGE WHEN A FAILURE HAS OCCURRED.

I.   ANY REPAIR OR REPLACEMENT OF A COVERED PART IF NO FAILURE HAS OCCURRED REGARDLESS OF REPAIR FACILITY RECOMMENDATIONS; OR IF THE WEAR ON THAT PART HAS NOT EXCEEDED THE FIELD TOLERANCES PERMITTED BY THE MANUFACTURER; ANY REPAIR NOT SPECIFICALLY AUTHORIZED BY US.

J.   IF ANY ALTERATIONS HAVE BEEN MADE TO YOUR VEHICLE OR *YOU* ARE USING, OR HAVE USED, YOUR VEHICLE IN A MANNER NOT RECOMMENDED BY THE MANUFACTURER. THIS WILL INCLUDE, BUT NOT BE LIMITED TO: THE FAILURE OF ANY CUSTOM OR ADD-ON AFTERMARKET PART REGARDLESS IF SUPPLIED BY A FRANCHISED DEALER OR NOT; ANY FRAME OR SUSPENSION MODIFICATIONS; LIFT KITS; OVERSIZED/UNDERSIZED TIRES OR WHEELS; TRAILER HITCHES; UNAUTHORIZED MODIFICATIONS TO ANY SYSTEM.

K.   IF YOUR ODOMETER HAS CEASED *TO* WORK AND REPAIRS HAVE NOT BEEN IMMEDIATELY MADE; THE ODOMETER HAS BEEN ALTERED IN ANY WAY SUBSEQUENT TO PURCHASE; OR IF VEHICLE'S TRUE MILEAGE CANNOT BE DETERMINED.

L.   ANY LIABILITY FOR PROPERTY DAMAGE, OR FOR INJURY TO OR DEATH OF ANY PERSONS ARISING *OUT* OF THE OPERATION, MAINTENANCE OR USE OF YOUR VEHICLE, WHETHER OR NOT RELATED TO THE PARTS COVERED. LOSS OF TIME, PROFIT, INCONVENIENCE, OR ANY OTHER LOSS THAT RESULTS FROM A FAILURE (EXCEPT AS PROVIDED UNDER THE BENEFITS OR COVERAGES HEREIN.)

M.   REPAIRS *TO* SEIZED OR DAMAGED ENGINES DUE *TO* CONTINUED OPERATION REGARDLESS OF CAUSE OR WITHOUT SUFFICIENT LUBRICANTS OR COOLANT. *YOU* ARE RESPONSIBLE FOR MAKING CERTAIN THAT THE OIL AND TEMPERATURE WARNING LIGHTS/GAUGES ARE FUNCTIONING PROPERLY. *YOU* MUST PULL OFF THE ROAD IMMEDIATELY AND DISCONTINUE VEHICLE OPERATION WHEN EITHER OF THESE LIGHTS/GAUGES INDICATES INADEQUATE PROTECTION OR PERFORMANCE OR WHEN OVERHEATING OCCURS.

N.   SALVAGED TITLE VEHICLES; WHEN RESPONSIBILITY FOR A REPAIR *IS* COVERED BY AN INSURANCE POLICY; WARRANTY FROM THE MANUFACTURER INCLUDING EXTENDED DRIVE TRAIN, MAJOR COMPONENT OR FULL COVERAGE WARRANTIES; A REPAIRER'S SERVICE CONTRACT/WARRANTY; OR FAILURES FOR WHICH THE MANUFACTURER HAS ANNOUNCED *ITS* RESPONSIBILITY THROUGH ANY MEANS, INCLUDING RECALL CAMPAIGNS AND FACTORY SERVICE BULLETINS

O. 3000 GT, 300ZX, ACURA NSX, ALFA ROMEO, ALTERNATIVE FUEL VEHICLES, ASTON MARTIN, AUDI, AUSTIN HEALEY, BENTLEY, BMW, COMPETITION/ OFF ROAD, CORVETTE, COMMERCIAL/DELIVERY VEHICLES, EMERGENCY VEHICLES, FIAT, FERRARI, HUMMER, JAGUAR, LAMBORGHINI, LAND ROVER, LIGHTNING, LOTUS, MASERATI, MERCEDES, MUSTANG COBRA, NO BRANDED OR SALVAGED VEHICLES, NO GREY MARKET VEHICLES, NO INOPERATIVE ODOMETERS, NO MILEAGE OVER 150,000, NO MOTOR HOMES, NO MOTORCYCLES, NO TWIN TURBO VEHICLES, ONE-TON VEHICLES OR GREATER, OVER 8 CYLINDERS, PEUGEOT, PORSCHE, PROWLER, RACING VEHICLES, RANGE ROVER, RENAULT, ROLLS ROYCE, DIESELS PRIOR TO 1990, DODGE STEALTH, 4100 ENGINES, ROTARY ENGINES, RX-7, RX-8, SAAB, SNOW PLOWS, STEALTH, STERLING, SUBARU SVX, TAURUS SHO, TRAILER USE IN EXCESS OF MFR'S LIMITS, VIPER, YUGO, ANY CLASSICS, RECREATIONAL VEHICLES, OR ANY EXOTIC VEHICLE.

P. IF YOUR VEHICLE IS USED FOR TOWING A TRAILER OR OTHER OBJECT OR VEHICLE WITHOUT BEING EQUIPPED WITH A FACTORY INSTALLED OR AUTHORIZED TOW PACKAGE; OR IS USED FOR COMMERCIAL PURPOSES, INCLUDING, BUT NOT LIMITED TO, RENTAL, TAXI, LIMOUSINE, LIVERY OR SHUTTLE, TOWING OR ROAD REPAIR, CONSTRUCTION, FARMING OR AGRICULTURAL PURPOSES, JOB SITE ACTIVITIES, HAULING, POLICE OR EMERGENCY SERVICES, PRINCIPAL OFF ROAD USE, RACING, COMPETITIVE DRIVING, SNOW REMOVAL, ROUTE-WORK.

Q. ANY FAILURE OCCURRING PRIOR TO THE CONTRACT PURCHASE DATE, OR IF INFORMATION PROVIDED BY YOU OR A REPAIR FACILITY CANNOT BE VERIFIED AS ACCURATE OR IS FOUND TO BE DECEPTIVELY INACCURATE.

R. ANY FAILURE OCCURRING OUTSIDE OF THE UNITED STATES OF AMERICA OR CANADA.

S. DAMAGE CAUSED BY PRE-IGNITION DETONATION, PINGING, IMPROPER/CONTAMINATED FUEL OR IMPROPER ENGINE ADJUSTMENTS.

**ANY VEHICLE WITH AN ODOMETER READING OF 150,000 MILES OR GREATER IS NOT ELIGIBLE FOR THIS COVERAGE.**

**OTHER IMPORTANT CONTRACT PROVISIONS**

**INSURANCE COMPANY STATEMENT**

Our obligations to perform under this Contract are insured under policy #**CARRG01-05-WAL** issued by **Capital Assurance Risk Retention Group, Inc., ("insurer")**, with office located at #3 Lockwood Drive, Charleston, South Carolina, 29401, Phone: (570) 714-8441 Fax: (570) 288-3323. If the Claims Administrator fails to pay a claim under this Contract within 60 (sixty) days of proof of loss by you, the service contract holder, you may make a direct claim against Capital Assurance by writing to the aforementioned address.

**When you receive this Contract read it carefully. Ensure that Part One, the Declaration Page is complete and accurate. Read all sections of Part Two, the Coverage Pages, carefully and if you are unclear about any information herein call the Administrator, for clarification.**

Purchase of this Contract is not required in order to purchase or obtain financing for the vehicle. This Contract is not issued by the manufacturer or wholesale company marketing the vehicle. This Contract will not be honored by such manufacturer or wholesale company.

## ARBITRATION

All claims or disputes relating to this Service Contract or the breach thereof shall be decided by binding arbitration unless YOU and Warranty America agree otherwise. Arbitration shall be specifically enforceable under the prevailing arbitration law. Warranty America agrees to use one (1) arbitrator, mutually acceptable to YOU and Warranty America. Written notice of the request for arbitration must be filed with Warranty America within a reasonable time after the claim or dispute has arisen, but not later than one (1) year after the claim or dispute arises. The award rendered by the arbitrator shall be final and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction.

If YOU have any legal claim against Warranty America and do not agree to arbitration, YOU agree that any action, claim, or suit shall only be brought in the District Court, Jefferson County, Colorado. If YOU bring any such action, claim, or suit against Warranty America in any court or forum other than in the District Court, Jefferson County, Colorado, Warranty America can seek dismissal of YOUR action, claim, or suit and require that it be maintained in Jefferson County, Colorado. No arbitration clause may prohibit a Arizona Service Contract holder from seeking remedy by filing a complaint with the director of the Arizona Department of Insurance as provided under the provisions of A.R.S. § 20-1095.04. The venue for arbitration settlement or any legal claim by a Arizona resident contract holder is the state of Arizona.

**ARIZONA-** Claims may not be denied solely because of a pre-existing condition unknown by the Contract Holder at time of purchase.

**CONNECTICUT –** The expiration date of this contract shall automatically be extended by the duration that the vehicle is in our custody being repaired. "Resolution of Dispute" – Written complaints may be mailed to: State of Connecticut, Insurance Department, P.O. Box 816, Hartford, CT 06142-0816, Attn, Consumer Affairs. The Written complaint must contain a description of the dispute, the purchase or lease price of the product, the cost of repair of the product and a copy of the warranty contract.

**IOWA –** The Iowa Insurance Commissioner is Therese M. Vaughan, Division of Insurance, State of Iowa, 330 East Maple Street, Des Moines, Iowa 50319.

**IDAHO –** Coverage afforded under this motor Vehicle Service Contract is not guaranteed by the Idaho Insurance Guarantee Association.

**SOUTH CAROLINA –** If the provider does not timely resolve such matters within (60) days of proof of loss, they may contact the South Carolina Department of Insurance, P.O. Box 100105, Columbia, SC 29202-3105, or (800)768-6134.

**TEXAS –** Unresolved complaints concerning Provider or questions concerning the regulation of Service Contract providers may be addressed to the Texas Department of Licensing and Regulation, E.O. Thompson State Office Building, 920 Colorado, Austin, Texas 78701, (512) 463-2906.

**UTAH –** Coverage afforded under this Contract is not guaranteed by the Property and Casualty Guaranty Association.

**WASHINGTON** – The implied warranty of merchantability on the motor vehicle is not waived if the Contract has been purchased within ninety (90) days of the purchase date of the motor vehicle from a Provider who also sold the motor vehicle covered by the Contract. The Contract Holder acknowledges by initialing hereafter that he/she has read the sections entitled Contract Holder Obligations, What To Do If You Have A Breakdown, Covered Parts, Exclusions -What This Vehicle Service Contract Does Not Cover, Contract Term, and How This Contract May Be Canceled.

**WISCONSIN** – Claims may not be denied solely because the contract holder did not obtain preauthorization within a reasonable time frame. **This warranty is subject to limited regulation by the office of the commissioner of insurance. A security deposit with the Wisconsin state treasurer is being used in lieu of an insurance policy**

**WYOMING** – Arbitration will be in accordance with the Wyoming Arbitration Act. Any other legal action is in accordance with Wyoming state law.

This Contract is not renewable.

**EXHIBIT B**

# PAYMENT PLAN AGREEMENT

Service Contract #: **PTOF495616**

| Purchaser | Seller | Dealer #: 657383 |
|---|---|---|
| Name: Jonathan Sahim | Name: DEALERS WARRANTY, LLC | |
| Address: 3516 Barry St | Address: 745 Friedens Road | |
| City, State, Zip: Virginia Beach, VA 23452-4304 | City, State, Zip: St. Charles, MO 63303 | |
| Phone: 757-463-1024 | Phone: 866-338-7877 | |
| E-Mail: | Salesperson: Justin Early | |

| Vehicle Information | | Contract Effective Date: 11/18/2007 | |
|---|---|---|---|
| Make: DODGE | Model: CARAVAN LE | Year: 1994 | Odometer: 139,760 |
| VIN: 2B4GH55R3RR737303 | | Coverage Term: (in months) 60 | Coverage Mileage: (in Miles) 100,000 |

Purchaser agrees to purchase a Vehicle Service Contract ("Contract") from Seller that is issued by __Warranty America__ ("Administrator").

Purchaser desires to pay for the Contract pursuant to an installment payment program (the "Program") and Purchaser and WF agree to be bound by the terms of the Program as follows:

## The amount to be financed and paid pursuant to the Program is calculated as follows:

| | | | |
|---|---|---|---|
| (a) | Price *(not including taxes on sale)* | $ | 1425.00 |
| (b) | Taxes on Sale | $ | 0.00 |
| (c) | Total Sale Price *(a + b)* | $ | 1425.00 |
| (d) | Down Payment *(minimum 10%)* | $ | 72.00 |
| (e) | Amount Financed *(c − d)* | $ | 1353.00 |

## TRUTH IN LENDING ACT DISCLOSURES

The federal Truth In Lending Act requires the following disclosures be made to Purchaser:

| | | |
|---|---|---|
| **ANNUAL PERCENTAGE RATE** *(the cost of the credit to Purchaser at a yearly rate)* | % | 0.00 |
| **FINANCE CHARGE** *(the dollar amount the credit will cost Purchaser)* | $ | 0.00 |
| **AMOUNT FINANCED** *(amount of credit provided to Purchaser or on Purchaser's behalf) (e)* | | $ 1353.00 |
| **TOTAL OF PAYMENTS** *(amount Purchaser will have paid after Purchaser has made all payments as scheduled) (c)* | | $ 1425.00 |
| **TOTAL SALE PRICE** *(total cost of Purchaser's purchase on credit (c) , including the down payment of $ ___72.00___ ) (d)* | | $ 1425.00 |

## Purchaser's payment schedule shall be as follows:

| # OF TOTAL PAYMENTS | AMOUNT OF EACH PAYMENT | PAYMENT DATE Monthly starting on | |
|---|---|---|---|
| 24 | 56.38 | 11/19 | Purchaser can prepay any amount without penalty. Purchaser can review the terms of this Agreement and other Contract related documents for additional information about nonpayment, default, penalties, refunds and any required prepayments. |

Purchaser shall have the right, at anytime, to cancel the Contract and, after cancellation, Purchaser shall have no obligation to make any further installment payments hereunder. If Purchaser exercises the right to cancel

Payment Processing Center:

Warranty Finance, LLC
300 S. Wacker Dr., Ste 2250
Chicago, IL 60606

800.839.7940 phone
312.261.4888 fax
www.warrantyfinance.com

F1

FWFCCC02

the Contract before making all installment payments hereunder, Purchaser will send written notice thereof to Administrator, Seller or Warranty Finance, LLC ("WF"). Unless Administrator, Seller or WF has received such a cancellation notice, and unless prohibited by applicable law, (i) a late payment fee may be imposed in the amount of the lesser of 5% of the late payment or $5.00 in respect of any installment payment not received within 5 days of the scheduled payment date therefore (the Late Charge"). WF is authorized by Purchaser to direct Administrator/Seller to cancel the Contract if any installment payment has not been received by WF within 10 days of the scheduled payment date. Purchaser hereby assigns to WF all Purchaser's right to receive refunds pursuant to the Contract until WF has been paid the Amount Financed.

**PAYMENT OPTIONS** Purchaser has paid Seller the Down Payment in the amount set forth above. Purchaser shall pay the balance of the Amount Financed to WF in accordance with the payment option selected below:

**CREDIT CARD PAYMENT**

Purchaser may pay the balance of the Amount Financed through and Purchaser hereby authorizes WF to make the applicable number of consecutive monthly charges to Purchaser's credit card account listed below, in the amount and at the times set forth above. This authority will remain in effect until the Total Price is paid in full, together with applicable charges if any, or until WF has received written notification of termination from Purchaser in time to allow reasonable opportunity to act on such notification.

| Credit Card Number | Expiration Date |
|---|---|
| ************4001 | 11/10 |

**NOTICE TO PURCHASER**
1. PURCHASER SHOULD NOT SIGN THIS AGREEMENT UNTIL PURCHASER HAS READ ALL OF IT OR IF ANY SPACES REMAIN BLANK.
2. PURCHASER IS ENTITLED TO AN EXACT COPY OF THE SIGNED AGREEMENT.
3. PURCHASER HAS THE RIGHT, AMONG OTHER THINGS, TO PAY IN ADVANCE THE FULL AMOUNT DUE AND TO OBTAIN UNDER CERTAIN CIRCUMSTANCES A PARTIAL REFUND OF THE FINANCE CHARGE IF ANY, PURCHASER HAS THE RIGHT TO CANCEL THE CONTRACT AT ANY TIME AND MAKE NO FURTHER INSTALLMENT PAYMENTS.
4. PURCHASER SHOULD KEEP THIS AGREEMENT TO PROTECT ITS LEGAL RIGHTS.

By signing below, Purchaser agrees to the terms and conditions of this Agreement, including those attached hereto as Exhibit A, and acknowledges receipt of a copy of this Agreement. This is a consumer credit/sale transaction. The terms of this contract are contained in the Agreement and Exhibit A attached hereto.

| PURCHASER | | WARRANTY FINANCE | |
|---|---|---|---|
| *PER PHONE* | 10/19/2007 | *Warranty Finance, LLC* | 10/19/2007 |
| Signature | Date | Signature | Date |

## NOTICE TO PURCHASER: FURTHER PROVISIONS ON EXHIBIT A

**PAYMENT PLAN AGREEMENT**

## EXHIBIT A

**PROMISE TO PAY.** Purchaser shall pay to WF the Amount Financed according to the provisions of this Agreement. Purchaser may not reduce any amounts owed to WF pursuant to this Agreement for any reason whatsoever.

**SECURITY INTEREST.** As security for Purchaser's obligations under this Agreement, Purchaser hereby assigns to WF all of Purchaser's right, title and interest in and to the Contract, including Purchaser's rights to cancel the Contract, receive all unearned and return amounts and to assert any rights to reinstate the Contract and all proceeds thereof.

**AMOUNT DUE FOLLOWING CANCELLATION.** If the Contract is cancelled, WF shall calculate the portion of the Total Price that has been earned through the date of cancellation plus all applicable late fees and other charges provided under this Agreement (collectively, the "Earned Amount"). In the event that Purchaser has made total payments to WF (the "Paid Amount") in excess of the Earned Amount, Administrator shall refund to Purchaser the amount by which the Paid Amount exceeds the Earned Amount. If the Paid Amount is less than the Earned Amount, Purchaser shall promptly pay to WF the amount by which the Earned Amount exceeds the Paid Amount.

**LATE CHARGE.** If any installment payment hereunder is more than 5 days late, and except as prohibited by applicable law, Purchaser shall pay WF the Late Charge. Nothing herein shall be considered to waive any default hereunder or to grant any grace period with respect to any default for failure to make any payment on the date it is due. Additionally, Purchaser shall pay to WF $25 for each check or each debit that is dishonored by Purchaser's bank.

**DEFAULT.** If (i) Purchaser fails to make any payment due hereunder or comply with any other provision hereof, defaults under any other agreement with WF or WF reasonably believes for any reason that Purchaser may not honor its obligations hereunder; or (ii) Purchaser becomes the subject of any voluntary or involuntary bankruptcy proceedings, has a receiver or trustee appointed for it or its property, makes an assignment for the benefit of its creditors or admits in writing that it is unable to pay its debts as they mature, <u>then</u> WF shall have the right to cancel the Contract, collect and receive funds with respect to the Contract, retain any amount owing hereunder (and remit any surplus in excess of $5.00 to Purchaser) and take any other action to enforce WF's rights hereunder. WF shall be entitled to be reimbursed for reasonable attorney's fees and expenses incurred in enforcing its rights or collecting amounts due hereunder. Purchaser hereby releases and discharges WF from any liability for damages with respect to any action taken following a default by Purchaser and shall indemnify and hold WF harmless from any liabilities, claims, damages or causes of action in connection with any such action by WF.

**POWER OF ATTORNEY.** Following any default hereunder, Purchaser hereby irrevocably appoints WF as its true and lawful attorney-in-fact until all amounts payable hereunder are paid in full. WF shall have full power under this power of attorney to (i) cancel the Contract, (ii) endorse or execute, in Purchaser's name, all checks issued and all other documents or instruments relating to the Contract, (iii) receive, demand, collect or sue for any amounts relating to the Contract, and (iv) take such other actions as are necessary to further the purposes of this Agreement.

**PAYMENTS AFTER CANCELLATION.** Any payment made by Purchaser after WF has mailed a notice of cancellation to Purchaser will not constitute a reinstatement of the Contract but shall be applied to Purchaser's outstanding obligations under this Agreement. Neither the acceptance nor the application of any such payments shall constitute an undertaking by WF to take steps to attempt to reinstate such Contract or constitute a waiver of any default hereunder. Notwithstanding any cancellation of any Contract, Purchaser shall remain liable under this contract until all amounts payable hereunder are paid in full.

**ACCEPTANCE, RATIFICATION, ACCURACY.** This Agreement shall be effective upon the mailing of acceptance of this Agreement by WF to Purchaser. The making of the first payment by or on behalf of Purchaser serves to ratify this Agreement even if the Agreement is not signed by or on behalf of Purchaser. WF may deem this Agreement void, at WF's sole option, if Purchaser makes any change to the preprinted portion of this Agreement (by way of deletion, modification, supplementation or otherwise). WF shall have the authority to revise this Agreement to insert any provision omitted (including but not limited to the due date of the first installment) upon written notice to Purchaser. In addition, if the total payments due hereunder are increased due to warranty underwriting considerations, WF shall have, following Purchaser's authorization, the right to revise the figures on the face of this Agreement.

**ASSIGNMENTS.** WF may, with or without notice to Purchaser, assign or pledge its rights, title and interest in, to and under this Agreement and the collateral and power of attorney herein described. Upon notice from any such assignee, Purchaser shall make all payments to such assignee without defense, offset or counterclaim as to such assignment.

# PAYMENT PLAN AGREEMENT

**WAIVERS, REMEDIES, ENTIRE AGREEMENT, GOVERNING LAW.** WF's failure to require strict performance of any provision hereof or to exercise any of its rights hereunder shall not waive or relinquish any future right under such provision and the provision shall continue and remain in full force and effect. The exercise of any rights or remedies by WF under this Agreement are cumulative and shall not preclude WF from exercising any other rights or remedy it may have hereunder or at law. Each provision hereof shall be interpreted so as to be effective and valid under applicable law. If any provision hereof is held to be unenforceable or invalid under applicable law, such provision shall not impair the validity or enforceability of the remaining provisions hereof. This Agreement shall be governed and construed in accordance with the laws of the State of Illinois.

**MISCELLANEOUS.** The content and format of this Agreement has been adopted to provide Purchaser with important information in a clear and familiar form and its use does not imply that any particular federal or state law relating to lending or installment sales applies to this Agreement or transactions it contemplates. Purchaser expressly acknowledges and understands that the purchase of a Contract is not required either to purchase or obtain financing for a new vehicle. Time is of the essence in this Agreement.

## NOTICE:

Any holder of this consumer credit contract is subject to all claims and defenses that the debtor could assert against the seller of goods or services obtained hereunder or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed the amount paid by the debtor hereunder.

**EXHIBIT C**

**DEALERS WARRANTY, LLC**
745 Friedens Road
St. Charles, MO 63303
866-338-7877

Jonathan Sahim
3516 Barry St
Virgina Beach, VA 23452-4304

Congratulations!  Your valuable mechanical breakdown protection is detailed in the enclosed contract booklet.  Please look it over and call with any questions you may have. Thank you for your purchase; we look forward to servicing your warranty needs.  Please call us for a quote on any other vehicle in your household.  Vehicles under 150,000 miles may qualify for additional coverages, and multi-vehicle discounts are available.

Be sure to familiarize yourself with the coverage, maintenance requirements, and procedures in the event of a mechanical breakdown.  Proper maintenance of your vehicle will contribute to a trouble free driving experience.  You should follow your vehicle manufacturer's recommended maintenance for your driving habits.

We encourage you to store your new service agreement in your vehicle.  This document contains important numbers needed in the event of a breakdown.

Welcome to our family of vehicle owners that have the peace of mind and financial security of mechanical breakdown protection.

*THANK YOU AGAIN!*

*Justin Early*

**Warranty Specialist**

<u>*IMPORTANT CONTACT NUMBERS:*</u>

Claims: 800-531-1925

Roadside Phone  866-222-7869

We are a service provider connecting extended warranty customers to underwriters and issuers.  These services include notification of need, explanation of benefits, superior coverage analysis, pricing comparison and negotiation, financial transaction assistance, financing, and special services.  A marketing service fee equal to 10% of contract value will be charged to your account if coverage does not reach full term.

WSTD02