**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

| | |
|---|---|
| JONATHAN J. SAHIM, individually and on behalf of others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>DEALERS WARRANTY, LLC a/k/a Mogi a/k/a FEDERAL AUTO PROTECTION, WARRANTY FINANCE, LLC, and BRIAN ALBERT MARINO,<br><br>        Defendants. | Case No. 09-cv-4279<br><br>Judge Milton I. Shadur<br><br>CLASS ACTION |

**PLAINTIFF'S OPPOSITION TO DEFENDANT WARRANTY FINANCE, LLC'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................1

ARGUMENT ..................................................................................................................................1

I. COUNT I OF THE SAC PROPERLY ALLEGES A TILA CLAIM AGAINST WF BECAUSE WF EXTENDED CREDIT TO SAHIM. ...................................................1

    A. WF's Standard Form Contract With Mr. Sahim Repeatedly Refers to Itself as a "Consumer Credit Transaction" in Which "Credit" is Extended to Mr. Sahim as the "Debtor," Language Consistent With its Actual Terms ......................1

    B. WF's Argument That it Did Not Extend "Credit" to Sahim is Contrary to the Language and Terms of its Own Contract as Well as Established Law ............2

II. COUNT III OF THE SAC STATES A VALID BREACH OF CONTRACT CLAIM AGAINST WF ...............................................................................................................4

    A. WF Contracted with Mr. Sahim, Received All of the Contractual Periodic Payments from Sahim Including the Portions He Alleges Were Wrongully Withheld From His Contractual Refund, Contractually Promised to Be Responsible For Claims Against DW, and Designated Itself as the Sole Party to Calculate Refunds to Purchaser ..................................................................4

    B. Whether Mr. Sahim Sold His Vehicle Is Irrelevant to Determining His Standing To Sue For Beach of Contract Because He Claims To Have Suffered Damages Due to Defenndants' Failure Refund Money Owed Him ............................................................................................................................6

III. COUNT II OF THE SAC STATES A VALID CLAIM UNDER THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT. ....................6

    A. Mr. Sahim Has Standing to Sue WF Under the ICFA Because WF, Which Is Based in Illinois, Is Bound By Its Own Preprinted Adhesion Contract Requiring That The Transaction Be Governed by Illinois Law .............................7

        1. Defendants' Adhesion Contract Specifies Illinois Law ..............................7

        2. Illinois Allows Parties to Choose which State's Law Shall Apply to their Relationship ......................................................................................7

        3. Because Illinois Law Applies, Sahim Can Sue Under the ICFA ................9

    B. Mr. Sahim Alleges A Valid Cause Of Action Under The Illinois Interest Act Regardless Or Whether That Act Is Incorporated Into The ICFA ..................10

    C. Mr. Sahim's Detailed Allegations Regarding Defendants' Unfair and Deceptive Practices are Sufficient to State a Claim Against Defendant WF Under the Consumer Fraud Act ...........................................................................11

        1. Who, What, When, and Where .................................................................11

|   | 2. | Rule 9(b) Does Not Apply to Plaintiff's Allegations of Unfair Conduct ................................................................................................... 14 |
| IV. | COUNT IV (THE UNJUST ENRICHMENT CLAIM), WHICH IS BASED ON DEFENDANTS' FRAUDULENT CONDUCT, STATES FACTS SUFFICIENT TO CONSTITUTE A CAUSE OF ACTION ................................................................ 15 |
| CONCLUSION ............................................................................................................................ 15 |

# TABLE OF AUTHORITIES

**Cases**

*Avery v. State Farm Mut. Auto. Ins. Co.*
   216 Ill. 2d 100 (2005) .................................................................................. 9, 10

*Chu v. Sabratek Corp.*
   100 F. Supp. 2d 827 (N.D.Ill. 2000) ................................................................ 13

*Crichton v. Golden Rule Ins. Co.*
   576 F.3d 392 (7th Cir. Ill. 2009) ........................................................................ 9

*Davis v. Colonial Secs. Corp.*
   541 F.Supp. 302 (E.D.Pa. 1982) ................................................................ 3, 13

*Demitropoulos v. Bank One Milwaukee*, N.A.
   915 F. Supp. 1399 (N.D. Ill. 1996) .................................................................... 8

*Gibson v. Bob Watson Chevrolet-Geo, Inc*.
   112 F.3d 284 (7th Cir. 1997) ............................................................................. 2

*Gridley v. State Farm Mut. Auto. Ins. Co.*
   217 Ill. 2d 158 (2005) ........................................................................................ 9

*Hall v. Sprint Spectrum L.P.*
   376 Ill. App. 3d 822 (Ill. App. Ct. 2007) .......................................................... 10

*Harris Trust and Sav. Bank v. McCray*
   21 Ill.App.3d 605 (1974) ................................................................................. 10

*Hobson v. Lincoln Ins. Agency, Inc.*
   2001 WL 55528 (N.D.Ill. 2001) ......................................................................... 3

*Int'l Surplus Lines Ins. Co. v. Pioneer Life Ins. Co. of Ill.*
   209 Ill. App. 3d 144 (Ill. App. Ct. 1990) ............................................................ 8

*Janikowski v. Lynch Ford, Inc.*
   210 F.3d 765 (7th Cir. 2000) ........................................................................... 14

*Kaufman v. Am. Express Travel Related Servs. Co.*
   2008 U.S. Dist. LEXIS 18129 (N.D. Ill. 2008) .................................................. 8

*Kronos Prods. v. Sasib Bakery N. Am., Inc.*
   2002 U.S. Dist. LEXIS 10684 (N.D. Ill. 2002) .................................................. 8

*Kubas v. Standard Parking Corp. IL*
   594 F.Supp. 2d 1029 (N.D. Ill. 2009) ................................................................ 6

*Leonel & Noel Corp. v. Cerveceria Centro Americana, S.A.*
    2009 WL 981384 (N.D.Ill. 2009) .................................................................... 14

*Martin v. Heinold Commodities, Inc.*
   117 Ill. 2d 67, 109 Ill. Dec. 772, 510 N.E. 2d 840 (1987) .................... 7, 8, 9, 10

*Morrison v. YTB Int'l, Inc.*
   2009 U.S. Dist. LEXIS 66793 (S.D.Ill 2009) ........................................................................ 9

*Mourning v. Family Publications Serv*.
   411 U.S. 356 (1973) ............................................................................................................. 2

*Munson v. Orrin E. Thompson Homes Inc*.
   395 F. Supp 152 (Minn. 1974) ............................................................................................. 3

*Newell Co. v. Petersen*
   325 Ill. App. 3d 661, 758 N.E.2d 903, 259 Ill. Dec. 495 (Ill. App. Ct. 2001) ..................... 8

*Phillips v. Bally Total Fitness Holding Corp.*
   372 Ill. App. 3d 53 (2007) ................................................................................................... 9

*Riethman v. Berry*
   287 F.3d 274 (3d Cir. 2002) ................................................................................................ 3

*Sears v. Likens*
   912 F.2d 889 (7th Cir. 1990) ......................................................................................... 9, 13

*Siegel v. Shell Oil Co.*
   480 F.Supp.2d 1034 (N.D.Ill. 2007) .................................................................................. 14

*Tamayo v. Blagojevich*
   526 F.3d 1074 (7th Cir.2008) .............................................................................................. 6

*Taylor v. Bob O'Connor Ford, Inc*.
   1998 WL 177689 (N.D.Ill. 1998) ...................................................................................... 14

*Thompson v. Fajerstein*
   2008 WL 4279983 (N.D.Ill. 2008) ............................................................................... 9, 14

*Vincent v. City Colleges of Chicago*
   485 F.3d 919 (7th Cir.2007) ................................................................................................ 6

*Windy City Metal Fabricators & Supply, Inc. v. CIT Technical Fin. Servs., Inc.*
   536 F.3d 663 (7th Cir. 2008) ............................................................................................. 14

**INTRODUCTION**

While defendant Warranty Finance, LLC ("WF") argues that the contracts attached to its Memorandum somehow disprove the allegations in plaintiff Jonathan J. Sahim's ("Sahim") Second Amended Class Action Complaint ("SAC"), the opposite is true. These documents actually <u>support</u> Sahim's claim by demonstrating that WF was a key participant with the other Defendants in a fraudulent scheme to create financing transactions for extended warranty service contracts with a goal of bilking Sahim and other consumers out of fees and interest charges that neither WF nor any other Defendant properly disclosed. For example, the documents attached to WF's Memorandum demonstrate conclusively that (1) WF dealt with Sahim, (2) WF never disclosed the hidden fees to Sahim, (3) The Federal Truth in Lending Act ("TILA") applies to the consumer credit contract between WF and Sahim, (4) WF acted in concert with, and agreed to be liable for all claims against, defendant Dealers Warranty, LLC ("DW") and (5) WF insisted that the law of Illinois – its home state – govern its dealings with Sahim.

WF played a pivotal role in the nation-wide fraudulent scheme Sahim has described. The Court should deny WF's motion, and allow this case to go forward.

**ARGUMENT**

**I. COUNT I OF THE SAC PROPERLY ALLEGES A TILA CLAIM AGAINST WF BECAUSE WF EXTENDED CREDIT TO SAHIM.**

WF's argument that this transaction is somehow exempt from the requirements of TILA has no merit. The agreement between WF and Sahim was a consumer credit transaction, and was entitled to all the protections of TILA. The WF-Sahim contract makes this clear.

**A. WF's Standard Form Contract With Mr. Sahim Repeatedly Refers to Itself as a "Consumer Credit Transaction" in Which "Credit" is Extended to Mr. Sahim as the "Debtor," Language Consistent With its Actual Terms**

On October 19, 2007, Dealers Warranty ("DW") sold Sahim a 5-year warranty services contract (Vehicle Service Contract, "VSC," Ex. A to WF Memo). DW charged Sahim a total price of $1,425.00. Under the terms of the Payment Plan Agreement ("PPA," Ex. B to both WF and DW Memos.), Sahim paid Dealers $72.00 on October 19, 2007 ("Down Payment") and WF paid the remaining $1,353.00 on Sahim's behalf ("Amount Financed"), leaving a $1,353.00 debt to be satisfied by making monthly payments of $56.38 to WF over the course of twenty-four months.

The PPA specifically refers to the $1,353.00 owed to WF as the "Amount Financed" and

"*the amount of **credit** provided*." It also states in no uncertain terms: "**This is a consumer *credit*/sale transaction**." (*Id*. p. F2) *See also* p. F4, NOTICE (referring to PPA as a "**consumer credit contract**," WF as the "holder" of the instrument, and Sahim as "debtor"). The PPA expressly contains Truth in Lending Act (TILA) Disclosures, required by federal law, including a 0.0% interest rate.[1] (*Id*. p. F1)

Under the PPA, Plaintiff was required to pay WF the entire $1353.00 Amount Financed, and could not reduce "any amounts owed… for any reason whatsoever." (Ex. A to PPA, p. F3, PROMISE TO PAY). Sahim retained the right to cancel the contract, without obligation to make further payments, by sending written notice to DW, Warranty America, or WF. (PPA, p. F1-F2) If he did so, WF would calculate a *pro rata* refund of any payments not yet earned for services provided minus applicable late fees and other charges provided by the PPA. (Ex. A to PPA, p. F3, AMOUNT DUE FOLLOWING CANCELLATION; *see also* VSC, p. T5, CANCELLATION OF VEHICLE SERVICE CONTRACT) However, even in that event, Defendant WF was still entitled to receive the entire Amount Financed, whether from Sahim, DW, or Warranty America. As stated in the PPA, after cancellation of the VSC by any party, "Purchaser hereby assigns to WF all Purchaser's right to receive refunds pursuant to the [VSC] until WF has been paid the Amount Financed." (PPA, p. F2).

### B. WF's Argument That it Did Not Extend "Credit" to Sahim is Contrary to the Language and Terms of its Own Contract as Well as Established Law

Now, despite the express language of its standard form contracts referring to the amount owed by Sahim as the "Amount Financed" and as "**credit**," to the contract as a "consumer *credit* transaction," and to Sahim as "debtor" – as well as explicitly contemplating that the PPA was subject to TILA – WF asserts that TILA does not apply because it did not issue "credit" to Sahim. WF claims that because Sahim was free to cancel the contract and discontinue payments, no "credit" was extended.

Defendant's argument is belied by the terms of the contract identified above: (1) the clauses providing that Sahim was responsible for paying back the entire Financed Amount (his

---

[1] In addition to the PPA's failure to disclose the "interest" charges and other fees associated with cancellation, it is possible that a hidden financing charge was embedded in the overall sales price of $1,425.00. *See In re Russell*, 181 B.R. 616, 620-21 & n.9 (M.D.Ala. 1995) (citing *Mourning v. Family Publications Serv*., 411 U.S. 356, 366 & n.26 (1973)); *Taylor v. Bob O'Connor Ford, Inc*., No. 97 C 720, 1998 WL 177689, at *8-9 (N.D.Ill. Apr. 13, 1998)(citing *Gibson v. Bob Watson Chevrolet-Geo, Inc*., 112 F.3d 284, 287 (7th Cir. 1997)).

debt to Finance) and could not reduce that amount "for any reason whatsoever;" and (2) the assignment of refunds as necessary to fulfill Sahim's obligations to pay his entire debt. Thus, Sahim was clearly obligated to pay the entire $1,353.00 credit advanced by WF toward the total contract price. *See* 15 U.S.C. § 1602(e) ("'credit' means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment"); *In re Miller*, 215 B.R. 970, 974 (E.D.Ky. 1997) ("credit" extended under TILA where defendant provides funds with expectation of repayment at a later time). *Cf. Riethman v. Berry*, 287 F.3d 274, 277-78 (3d Cir. 2002) (no credit extended where customer does not have right to defer payment but service provider may demand prompt and full payment – even if it elects not to do so).[2]

Unlike the cases concerning pay-as-you-go insurance contracts cited by WF,[3] this case is more analogous to *Hobson v. Lincoln Ins. Agency, Inc.*, No. 99 C 5619, 2001 WL 55528, at *1-2 (N.D.Ill. Jan. 21, 2001). There, as here, credit was extended under TILA because plaintiff was not paying ongoing premiums in installments but was in fact repaying a debt to a separate premium finance company which had financed the transaction.[4] Here, Sahim owed WF the lump sum Financed Amount of $1,353.00, to be paid on WF's repayment schedule. Moreover, as here, plaintiff in *Hobson* owed the full amount even if the underlying service contract were canceled, and the company was entitled to receive plaintiff's *pro rata* refunds from the service provider until it had recovered this amount.

As established in *Hobson* and the cases cited by Defendant, even where agreements allow

---

[2] In addition, the PPA exhibits further manifestations of a classic credit relationship. Sahim assigned Finance a security interest "as security for [his] obligations" to repay his debt. (Ex. A to PPA, p. F3, SECURITY INTEREST) Should he default on his payment, WF had the right to "cancel the [VSC], collect and receive funds with respect to the [VSC], and retain any amount owing hereunder… and take any other action to enforce [its] rights hereunder." (*Id.*, DEFAULT)

[3] *See Kuhfeldt v. Liberty Mut. Ins. Co.*, 833 F.Supp. 632 (E.D.Mich. 1993); *Gurlach v. Allstate Ins. Co.*, 338 F.Supp. 642 (S.D.Fla. 1972). Plaintiff notes that these cases are based on a specific administrative exemption to TILA for insurance premiums payable in installments. *See Hobson*, <u>infra</u>. Similarly, *Munson v. Orrin E. Thompson Homes Inc.*, 395 F. Supp 152 (Minn. 1974) held that a surcharge within an electric rate structure payable either in a lump sum or installments was not a "credit sale" – hardly surprising since Congress had expressly excluded rate tariffs from coverage under TILA. *Davis v. Colonial Secs. Corp.*, 541 F.Supp. 302, 304 n.5 (E.D.Pa. 1982) (finding terminable rental agreement to be "credit sale" under TILA).

[4] *Gurlach*, <u>supra</u>, expressly distinguished this type of situation where the premiums are financed and the insured is obligated to repay the third-party creditor. *Id*. at 647 (distinguishing *Stefanski*).

for early cancellation, "credit" is extended if the creditor is entitled to retain unearned premiums. There is no "credit" transaction (but merely payment for services on an as-go basis) only if the consumer receives a full *pro rata* refund of monies paid but not yet earned. *See Hobson*, 2001 WL 55528, at *2; *Kuhfeldt*, 833 F.Supp. at 635. Therefore, Sahim's contractual obligations to WF even in the event of cancellation defeat the scenario set up by Defendant. Moreover, Defendants' deduction of exorbitant "fees" from Sahim's refund itself undermines WF's argument. Instead of providing a full *pro rata* refund for payments made in advance of future coverage periods, Defendants retained a substantial portion of these monies under the guise of "fees" and "interest." Through the assessment of these bogus charges, Plaintiff was obligated to pay more than $300 of his debt regardless of the fact that Defendants had not earned these payments under the VSC and PPA by providing actual services.

## II. COUNT III OF THE SAC STATES A VALID BREACH OF CONTRACT CLAIM AGAINST WF

WF argues that Sahim is suing for breach of only the VSC and not the PPA. (WF Memo p. 7). This is incorrect.

### A. WF Contracted with Mr. Sahim, Received All of the Contractual Periodic Payments from Sahim Including the Portions He Alleges Were Wrongully Withheld From His Contractual Refund, Contractually Promised to Be Responsible For Claims Against DW, and Designated Itself as the Sole Party to Calculate Refunds to Purchaser

WF concedes that it entered into a Payment Plan with Sahim, that it received money from him pursuant to the contract, and that he may have a contractual right to a refund of that money. (WF Memo p. 6). WF argues, however, that one need merely read the contract documents to conclude as a matter of law that WF has no responsibility concerning Sahim's refund.

WF's printed form PPA expressly promised that a cancellation refund of monies which had been paid by Purchaser to WF would be reduced only by deductions for charges set forth in the PPA, with no mention at all of additional charges for interest and marketing fees: "**AMOUNT DUE FOLLOWING CANCELLATION. If the Contract is cancelled *WF shall calculate* the portion of the Total Price that has been earned through the date of cancellation plus all applicable late fees and other charges provided *under this Agreement*…**" (emphasis added)." (WF Memo, Ex. B at F3.)

Since "interest" and "marketing fees" are not "provided under this Agreement," and WF's printed form contract promised that WF would calculate Purchasers' refunds to be reduced

only by "fees and other charges provided under this Agreement," it is entirely proper that WF have to defend against the allegation that interest and marketing fees were in fact deducted in breach of the contract (SAC ¶¶ 5, 55-59).

WF also argues that as a matter of law any responsibility to Sahim and other Purchasers due to allegedly improper marketing fees, lies only with DW because the portion of the package of contract documents drafted by defendants describing the marketing fee is on DW stationery. In addition to ignoring that WF's own contract promised there would be no such charges (discussed above), WF also ignores that the Payment Plan portion of its contract states that WF expressly undertook to be subject to all claims by the contract debtor against DW (identified in the WF contract as "Seller"): **"NOTICE: Any holder of this consumer credit contract is subject to all claims and defenses that the debtor could assert against the seller…"** (WF Memo Ex B at F4.) Apparently, WF's position is that even though its PPA identifies DW as "Seller," that should be ignored for purposes of this Motion.

WF's disavowals of involvement also ignore that under the cancellation refund section of WF's contract excerpted above WF is responsible for the primary issue in this case (**"WF shall calculate…**" the amount of the refund to be paid).

WF's contract is replete with additional examples of its intimate involvement in the entire transaction concerning the monies at issue in this case. WF's Payment Plan printed form contract shows that WF contractually reserved sole authority to declare default, to modify the contract, to assign the contract for its own business purposes, imposed its home state of Illinois as the mandatory choice of law, and otherwise clearly was a primary contractual party to virtually all aspects of the financing transaction at issue in this case.

Basically, the premise of WF's Motion is that its choice of terminology throughout its printed form contract (e.g., where it assumes responsibility for claims against DW, where it purports to take responsibility to calculate refunds to limit charges against Purchaser to those described in "this Agreement," where it purports to take responsibility to calculate the amount of the refund, etc.) for purposes of this Motion should be ignored or construed in favor of WF. Federal Rule of Civil Procedure 12(b)(6) requires the Court to reject this invitation:

> To survive a motion to dismiss for failure to state a claim, the complaint must overcome 'two clear, easy hurdles': (1) 'the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests;' and (2) 'its allegations must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief

above the 'speculative level.' '*Tamayo v. Blagojevich,* 526 F.3d 1074, 1084 (7th Cir. 2008) (emphasis in original). Moreover, at this stage it is not incumbent on the plaintiff to plead specific facts. *See Vincent v. City Colleges of Chicago,* 485 F.3d 919, 923-24 (7th Cir. 2007) ('Facts that substantiate the claim ultimately must be put into evidence, but the rule 'plaintiff needs to prove Fact Y' does not imply 'plaintiff must allege Fact Y at the outset.').

*Kubas v. Standard Parking Corp. IL*, 594 F.Supp.2d 1029, 1031 (N.D. Ill. 2009).

> B. **Whether Mr. Sahim Sold His Vehicle Is Irrelevant to Determining His Standing To Sue For Beach of Contract Because He Claims To Have Suffered Damages Due to Defenndants' Failure Refund Money Owed Him**

Contrary to WF's assertion, nowhere in the SAC does Sahim allege that members of the class must sell or dispose of their vehicle to qualify for a refund, nor does WF present anything in the contract documents making this a refund requirement.

The SAC merely alleges at paragraph 60 that in addition to persons who, like Sahim, affirmatively exercised their contractual refund rights, others were damaged by the defendants' failure to provide agreed-upon refunds. "In addition, there are many Class members who sold or otherwise disposed of their covered vehicles prior to the end of the warranty period but did not receive any refund at all from Defendants. …."

To have standing, a plaintiff must allege actual injury. "To establish standing…the critical question is whether at least one petitioner has 'alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction.' " *Horne v Flores*, 129 S.Ct. 2579, 174 L.Ed.2d 406 (2009). The issue for standing purposes is whether Sahim has alleged that the defendants failed to pay refund money owed to him, not whether all class members had the same basis for claiming entitlement to a refund (arguably relevant later on to class certification, but frankly difficult to fathom as a serious issue even there).

Here, in paragraph 14 of the SAC, Sahim alleged actual injury to himself: "On or about April 10, 2009, however, Defendant, Dealers Warranty sent Plaintiff a check for $318.24 less than Mr. Sahim expected. The "cancellation refund" was for only $258.47 and contained no explanation as to how this amount was calculated." This is sufficient to establish standing to sue on behalf of other class members who were damaged by WF's and the other defendants' breach of their obligations to provide a refund.

III. **COUNT II OF THE SAC STATES A VALID CLAIM UNDER THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT.**

The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") protects

consumers against: "any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact. . ." 815 ILCS 505/2. "Any person who suffers actual damage as a result of a violation of [the] Act committed by any other person may bring an action against such person." 815 ILCS 505/10a(a).

### A. Mr. Sahim Has Standing to Sue WF Under the ICFA Because WF, Which Is Based in Illinois, Is Bound By Its Own Preprinted Adhesion Contract Requiring That The Transaction Be Governed by Illinois Law

Where an Illinois defendant has contractually agreed to Illinois law, the Illinois Supreme Court has afforded out of state residents the protection of the ICFA. *Martin v. Heinold Commodities, Inc.*, 117 Ill. 2d 67 (1987). Since Defendants' own form contract provides for the application of Illinois law, Sahim can sue under the ICFA.

#### 1. Defendants' Adhesion Contract Specifies Illinois Law

Defendants sent Sahim one set of contract documents that included a PPA and a VSC. See Ex. B to DW Memo. In WF's moving papers, the PPA and VSC are attached as separate exhibits. The choice of Illinois law is specified at page F4 of the PPA: ". . . This Agreement shall be governed and construed in accordance with the laws of the State of Illinois." See Ex. B to WF Memo, signed by WF, at F2, and Exhibit B to DW Memo, signed by DW at F2 as agent for Illinois-based WF. Indeed, WF's name, address, phone, fax, and email address are at the bottom of each page of the PPA. Its principal place of business is in Illinois. (SAC ¶ 16)

Defendants, who drafted the financing contract with Illinois-based WF designated as the mandatory finance company, required that Sahim agree to be bound by Illinois law. The "Seller," DW, signed as agent for the Illinois-based finance company, WF's contract shows "per phone" approval obtained from Sahim by Illinois-based WF, and all payments were required to be made in Illinois with WF. (SAC ¶ 16). It was Defendants' idea and their adhesion contract in which they inserted Plaintiff's "per phone" agreement. (*Id.* at F2) The choice of law provision is therefore expressly applicable to all of the Defendants.

#### 2. Illinois Allows Parties to Choose which State's Law Shall Apply to their Relationship

Under Section 187 of the Restatement (Second) of Conflicts of Laws, which Illinois courts follow, Sahim may sue under the ICFA. Section 187 provides:

§ 187. Law of the State Chosen by the Parties

(1) The law of the state chosen by the parties to govern their contractual rights

and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Illinois follows § 187 regarding the freedom of parties to choose the applicable law. *Int'l Surplus Lines Ins. Co. v. Pioneer Life Ins. Co. of Ill.*, 209 Ill. App. 3d 144, 154 (Ill. App. Ct. 1990).

In the consumer class action, *Kaufman v. Am. Express Travel Related Servs. Co.*, 2008 U.S. Dist. LEXIS 18129, at *9 (N.D. Ill. 2008) this court stated:

> The law is clear that, where a valid contract has been formed, a court should enforce the choice of law provision contained within that contract unless it violates the forum state's public policy and the forum state has a materially greater interest in the litigation than the chosen state. *See, e.g., Demitropoulos v. Bank One Milwaukee*, N.A., 915 F. Supp. 1399, 1413 (N.D. Ill. 1996) (following § 187 of the Restatement (Second) of Conflict of Laws where "as here, the parties to a contract have included an express choice of law provision in their contract"). (footnote omitted)

Similarly, in *Kronos Prods. v. Sasib Bakery N. Am., Inc.*, 2002 U.S. Dist. LEXIS 10684, at *5-6 (N.D. Ill. 2002), this court stated:

> Following the analysis set forth in § 187 of the Restatement (Second) of Conflict of Laws, Illinois courts recognize and enforce choice-of-law provisions unless the state chosen does not have a substantial relationship to the parties or the transaction and the choice has no other reasonable basis or the application of the chosen law would undermine a fundamental policy of another state with a materially greater interest in the underlying dispute. *Newell Co. v. Petersen*, 325 Ill. App. 3d 661, 758 N.E.2d 903, 922, 259 Ill. Dec. 495 (Ill. App. Ct. 2001).

Here, the issue of which state's law could govern the relationship is one which the parties could resolve by agreement. *See Martin.*, 117 Ill.2d 67 (multi-state class action brought by an Oklahoma resident could be maintained under the Illinois Consumer Fraud Act.) Certainly, Defendants are in no position to argue otherwise, since the contract is their pre-printed form. Even were the issue not one that could not be resolved by agreement, Illinois has a substantial

relationship to the parties and the transaction (*see*, *e.g.*, *Thompson v. Fajerstein*, No. 08 C 3240, 2008 WL 4279983, at *5 (N.D. Ill. 17, Sept. 2008)), and application of Illinois's consumer protection statute is not contrary to the fundamental policy of any other state. Thus, Sahim is entitled to bring a claim under the ICFA.

### 3. Because Illinois Law Applies, Sahim Can Sue Under the ICFA

In *Martin*, supra, which none of the Defendants cites, a plaintiff class consisting of both Illinois and non-Illinois residents brought suit against an Illinois company that had served as broker for the plaintiffs in commodities transactions. The broker relationship had been established by a contract that allegedly contained deceptive statements. The Illinois Supreme Court allowed certification of the plaintiffs' claims under the Illinois Consumer Fraud Act, even with respect to the non-Illinois plaintiffs. *Martin*, 117 Ill. 2d at 80-83.

In *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100 (2005), on which WF heavily relies, there was no choice of law provision specifying Illinois law. Indeed, the *Avery* court distinguished *Martin* based on the choice of law provision and several other factors, most of which are also present here:

> In *Martin I*, this court specifically based its decision on the following facts: (1) the contracts containing the deceptive statements were all executed in Illinois; (2) the defendant's principal place of business was in Illinois; (3) the contract contained express choice-of-law and forum-selection clauses specifying that any litigation would be conducted in Illinois under Illinois law; (4) complaints regarding the defendant's performance were to be directed to its Chicago office; and (5) payments for the defendant's services were to be sent to its Chicago office. Given these circumstances, this court concluded that the Act could apply to the whole class. *Martin I*, 117 Ill. 2d at 82-83.

*Avery*, 216 Ill. 2d at 133. Here, as in *Martin*, WF's principal place of business is in Illinois, the contract specified Illinois law, and payments were sent to WF's Chicago office.

Defendants cite several inapposite cases where, unlike here, there was apparently no choice of law provision specifying Illinois law. *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 397 (7th Cir. Ill. 2009) (sole defendant's principal place of business was in Indiana); *Gridley v. State Farm Mut. Auto. Ins. Co.*, 217 Ill. 2d 158 (2005); *Phillips v. Bally Total Fitness Holding Corp.*, 372 Ill. App. 3d 53 (2007); *In re Sears Roebuck & Co.*, 2005 U.S. Dist. LEXIS 28064 (N.D. Ill. 2005).

Defendants rely heavily on an unpublished federal trial court case, *Morrison v. YTB Int'l, Inc.*, 2009 U.S. Dist. LEXIS 66793 (S.D.Ill 2009), which cannot overrule the published opinion

of the Illinois Supreme Court in *Martin* on a question of Illinois state law. Beyond that, the court in *Morrison* stated, "it is not at all clear with which of the Defendants the contract containing the choice-of-law clause supposedly was made." *Morrison*, 2009 U.S. Dist. LEXIS 66793, *9. Here, the contract is attached to Defendants' moving papers. One copy bears WF's name and signature (Ex. B to WF Memo) and another version signed by DW as agent for the Illinois-based WF (Ex. B to DW Memo). The situation clearly more applicable here was that explained by the court in *Hall v. Sprint Spectrum L.P.*, 376 Ill. App. 3d 822, 825 (Ill. App. Ct. 2007):

> This is not a case like *Avery*, where the plaintiff sought extraterritorial application of a statute based on the terms of the statute… Instead, in this case, the trial court enforced a voluntary and broadly worded choice-of-law provision in an adhesion contract drafted by Sprint to determine the validity and legality of a provision within the same contract – the early termination fee provision.

### B. Mr. Sahim Alleges A Valid Cause Of Action Under The Illinois Interest Act Regardless Or Whether That Act Is Incorporated Into The ICFA

Sahim acknowledges that he mistakenly alleged that the Illinois Interest Act had been incorporated into the ICFA. The ICFA expressly incorporates a long list of consumer protection statutes, but the list does not include the Interest Act. However, WF does not argue that the SAC failed adequately to apprise Defendants that Sahim also alleged violation of the Interest Act:

> "50. … Defendants engaged in consumer transactions where interest was either contracted for or received without clear written disclosure of the relevant terms, including the terms related to the assessment of interest. Through these acts and omissions, Defendants violated the Illinois Interest Act, 815 ILCS 205/4…"

WF does not contend that Sahim fails to allege facts or theories covered by the Interest Act disclosure requirements;[5] nor does WF argue that the SAC should be dismissed because the Illinois choice of law provision in the contracts is inapplicable to his Interest Act allegations.

A remedy commensurate with the offense would be for Sahim to amend to state the Interest Act claim more fully in a separate count,[6] not dismissal with prejudice as requested in

---

[5] Co-Defendant DW argues at fn.6 of its Memo that the Interest Act does not apply because this transaction did not involve a "loan," but merely a sale of goods or service. This ignores the well-established principle in Illinois cases that, unlike a straight installment sale between a seller and buyer, a tripartite transaction in which the debtor promises to make periodic payments to a third party, --i.e., sale of goods by the seller (DW here) financed by a third party finance company (WF here)-- is treated as a loan/financing transaction. *Harris Trust and Sav. Bank v. McCray*, 21 Ill.App.3d 605, 610 (1974).

[6] And to correct the typographical error not challenged by Defendants but which Sahim feels obligated to mention to the Court — paragraph 50 of SAC mistakenly refers to section 4 of the Interest Act rather than the correct reference to section 4*a* (the Illinois State Law version of the TILA disclosure requirements, 815 ILCS 205/4*a*).

WF's Motion. Leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Amendment should be permitted unless a party opposing amendment shows "undue delay, bad faith, dilatory motive on the part of the movant ... [or] undue prejudice." *Larkin v Galloway*, 266 F.3d 718, 722 (7th Cir, 2001). Amendment has been denied, for example, where the plaintiff "inexcusably waited until shortly before the trial was to begin to add new defendants, [and] filed the second amended complaint 16 months after the initial filing of the complaint." *Perrian v O'Grady*, 958 F.2d 192 (7th Cir. 1992). Here, in contrast, no answer has been filed, it has been only a few weeks since the current judge was assigned, no discovery responses have been provided, and there is not yet even a discovery schedule in place.

      **C.     Mr. Sahim's Detailed Allegations Regarding Defendants' Unfair and Deceptive Practices are Sufficient to State a Claim Against Defendant WF Under the Consumer Fraud Act**

           **1.     Who, What, When, and Where**

Defendant WF contends that the SAC does not meet the requirements of Rule 9(b) because it fails to allege the "who, what, when, and where" needed to support a claim for fraud,[7] while completely ignoring numerous applicable paragraphs in the SAC and express terms in its own contract documents. The SAC specifically describes that DW had a general business model to perpetrate a fraudulent scheme of creating financing transactions for extended warranty service contracts with a goal of bilking consumers out of bogus "fees" and "interest charges" undisclosed in their standard form contracts. (SAC ¶¶ 2-6, 19, 26, 49-50). The SAC describes the involvement of WF as the finance company in this scheme to which consumers pay their monthly payments (SAC ¶¶ 16, 22). As set forth in the SAC, the fraudulent scheme included contract documents with a payment schedule deliberately front-loading payments to the early months of the warranty term so that Defendants would receive unearned profits in advance of actual warranty coverage (*e.g.* SAC ¶¶ 4, 27, 60); and that the form contracts used by DW and WF (attached to Defendants' Motions as Ex. B) failed to disclose so-called "interest charges" and inadequately disclosed huge "marketing fees" to be deducted from customers' *pro rata* cancellation refunds. (*E.g.* SAC ¶26).

---

[7] Under Rule 9(b), Plaintiff need only allege "the acts, the times, the concealment, and [the] defendant" – *the circumstances* constituting fraud – "somewhere" in the pleadings and thereby put defendant on fair notice of its conduct. *Fidelity Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, 412 F.3d 745, 749 (7th Cir. 2005); *Schwartz v. Celestial Seasoning*, 124 F.3d 1246, 1252 (10th Cir. 1997); *Farmers & Merchants Bank v. Putnam*, No. 1:08-cv-161, 2009 WL 1076198, at *7 (N.D.Ind. Apr. 20, 2009).

The SAC specifically alleges what misrepresentations and material omissions were made to Sahim, stating that "Defendants nowhere disclosed the surprise interest rate charge in any of their service contracts" (¶ 6), and that WF therefore "fail[ed] to disclose mandatory information required by the Illinois Interest Act." (¶¶ 26, 48). In addition, the SAC alleges that Defendants' "so-called 'marketing fee' had nothing to do with 'marketing' and was upon information and belief never earned by the Defendants" (SAC ¶ 26) – in other words, an invented charge for no actual services. The SAC further alleges that WF misrepresented, concealed, suppressed or omitted material facts in its dealings with Plaintiff including "the total amount of fees payable to Defendants, including without limitation the 'interest' and alleged 'marketing fees' incurred upon termination of a service contract." (¶ 49). In addition, the SAC alleges that WF "failed to fully and adequately disclose the terms of the service contracts at issue" by engaging in a consumer transaction "without clear written disclosure of relevant terms including the terms related to the assessment of interest." (¶ 50).

The SAC further describes exactly how Plaintiff Sahim was victimized by this scheme, including the details of exactly the amount and dates of payments he made, and the amount by which allegedly he was bilked under Defendants' fraudulent business model. (SAC ¶¶ 21-25)

The SAC refers to the standard form contracts at the heart of Defendants' scheme (Ex. "B" to Defts' Motions), which Defendants argue, and Plaintiff concedes, are part of the pleadings. These documents clearly show:

(1) that the financing arrangement at the crux of this scheme involved concerted action between DW and WF (e.g., signature line at p. F2 of the DW version of the contract shows DW signing as agent for Illinois based WF);

(2) that WF (acting in Illinois) and DW both purport in the signature line at p. F2 of their respective contracts to personally deal with the victims to obtain "per phone" approval;

(3) that the documents confirm the allegations in the SAC of failure to disclose the interest charges by misrepresenting at p. F1 that finance costs will be "$0.00";

(4) that DW and WF documents both state on their face to be a "consumer credit/sale transaction" covered by the requirement to make "TRUTH IN LENDING ACT DISCLOSURES," and both set forth the "amount financed";

(5) that both the DW and WF Payment Plan forms promise at p. F3 that Illinois-based WF will calculate cancellation refunds to include _only_ such fees/costs as set forth under the

Payment Plan itself (which includes no disclosure of "interest" or "marketing fees");

(6) that the underlying Vehicle Service Contract ("VSC") with Warranty America discloses only a $50 "cancellation fee" for CANCELLATION OF VEHICLE SERVICES CONTRACT, and *no* other applicable deductions against a customer's *pro rata* refund;

(7) that WF will be liable for all claims consumers may have against DW, p. F4; and

(8) mandatory imposition of the law of Illinois, WF's location.

In the context of these contract documents, Finance's assertion that it simply cannot figure out who did what and when cannot be credited. Where it is reasonably clear how the alleged deceptions furthered the alleged fraudulent scheme, a complaint meets the pleading requirements of Rule 9(b) even though it groups parties together as "Defendants." *Chu v. Sabratek Corp.*, 100 F. Supp. 2d 827, 836 (N.D.Ill. 2000).[8] A group pleading is defective only to the extent the complaint is utterly devoid of detail of a defendant's allegedly fraudulent activities and thus fails to provide any notice of its purported misconduct. *See Chu*, *supra* (distinguishing cases, including *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990), cited by Defendant).[9,10]

In short, Finance's alleged conduct is apparent from the pleadings, including by reference to the operative documents referenced in the SAC and attached to Defendants' motions.[11]

---

[8] *See also Martinez v. Freedom Mortgage Team, Inc*., 527 F.Supp.2d 827, 839 & n.7 (N.D.Ill 2007) (if *circumstances* constituting a fraud perpetrated collusively by multiple defendants are sufficiently pled, plaintiff need not also set forth the "depth and breadth of collusion" in detail).

[9] *Daniels v. Bursey*, No. 03 C 1550, 2003 US Dist. LEXIS 154888 (N.D.Ill. Sept. 3, 2003), also cited by Defendant, is similar to the cases distinguished by *Chu*. There, the court dismissed a complaint which failed to "identify what misrepresentations that company or its representatives are claimed to have made, by what means, when, and to whom." *Id*. at *17.

[10] The remaining cases cited by Defendant are inapposite. In *Lantz v. Am. Honda Motor Co., Inc.*, the complaint did not mention when the plaintiffs saw the alleged misleading statements or that those statements induced plaintiffs to make their purchases. Here, the SAC specifically identifies Finance's misleading written contract (SAC, ¶¶ 6, 22, 26, 49, 50), intended to induce reliance and causing actual injury. (SAC ¶¶ 51, 53). In *Davis v. G.N. Mortg. Corp.*, the court determined that plaintiff had not introduced sufficient evidence to withstand summary judgment, not that his claim should be dismissed under Rule 12(b)(6) for failure to plead with particularity.

[11] In any case, where a pleading fails to satisfy the particularity requirements of Rule 9(b), courts typically grant leave to amend. *See*, *e.g*., *Taylor v. Feinberg*, No. 08-CV-5588, 2009 WL 3156747, at *6 (N.D.Ill Sept. 28, 2009); *U.S. ex rel Walner v. Northshore Univ. Health Sys*., No. 08 C 2642, 2009 WL 3055357, at *5 (N.D.Ill. Sept. 18, 2009); *Pirelli Armstrong Tire Corp. v. Walgreen Co*., No 09 C 2046, 2009 WL 2777995, at *8 (N.D.Ill. Aug. 31, 2009) (cited by Defendant, at 11 n.3) *See also Ryan v. Brookdale Int'l Sys., Inc*., No. H-06-01819, 2007 WL 3283655, at *7 (S.D. Tex. Nov. 6, 2007 (noting a "general consensus" permitting the amendment of complaints that fail to satisfy Rule 9(b)). *See generally* 5B

### 2. Rule 9(b) Does Not Apply to Plaintiff's Allegations of Unfair Conduct

As WF acknowledges (Memo at 11 n.3), allegations of *unfair* conduct under the ICFA need not comply with Rule 9(b)'s heightened pleading requirements for allegations of fraud. *Windy City Metal Fabricators & Supply, Inc. v. CIT Technical Fin. Servs., Inc.*, 536 F.3d 663, 669-70 (7th Cir. 2008); *Leonel & Noel Corp. v. Cerveceria Centro Americana, S.A.*, No. 08 C 5556, 2009 WL 981384, at *4 (N.D.Ill. Apr. 13, 2009). *See also Siegel v. Shell Oil Co.*, 480 F.Supp.2d 1034, 1043-44 & n.5 (N.D.Ill. 2007) (claims of either unfair or deceptive conduct under the ICFA do not require intentional misrepresentation and thus not subject to Rule 9(b)).

Plaintiff has clearly alleged *unfair* conduct – hidden, undisclosed, and exorbitant cancellation fees as part of a concerted scheme to extract hundreds of dollars from each of thousands of consumers.[12] These allegations are sufficient to plead a violation of the ICFA under Rule 8(a), the operative pleading standard.

Moreover, exhaustive analysis of various Rule 8 and Rule 9 distinctions is unnecessary here because a principal issue (the undisputed failure of Defendants' contracts to disclose interest costs and Plaintiff's allegation at SAC ¶¶ 6, 21-25 that he was charged undisclosed interest) is clear under established precedent: "Under Illinois law, failing to disclose the financing terms of a consumer contract violates the ICFA." *Janikowski v. Lynch Ford, Inc.*, 210 F.3d 765, 769 (7th Cir. 2000) (citing *Grimaldi v. Webb*, 282 Ill.App.3d 174 (1st Dist. 1996)). *See also Taylor v. Bob O'Connor Ford, Inc.*, No. 97 C 720, 1998 WL 177689, at *9 (N.D.Ill. Apr. 13, 1998) (allegations sufficient to state claim under TILA also establish ICFA claim); *People ex rel*

---

Wright & Miller Fed. Prac. & Proc. Civ. 3d § 1357 at n.94 ("dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected.")

   Defendant Finance's cited precedents, *Ellis* and *Lantz* (*see* Memo at 12), did not actually specify dismissal *with prejudice*, as implied by Defendant. In fact, the *Lantz* court *specifically <u>granted</u> leave to amend*. 2007 WL 1424614, at *12.

[12] A *deceptive* act under the ICFA may consist of an unintentional misrepresentation (*Siegel*, <u>supra</u>), including the omission or concealment of a material fact. *Oshana v. Coca-Cola Co.*, No. 04 C 3596, 2005 WL 1661999, at *8 (N.D.Ill. July 13, 2005) (citing *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 504-05 (Ill. 1996)). Moreover, the same conduct may state a claim for both an unfair practice under the ICFA (Rule 8(a) notice pleading standard) and fraud (Rule 9(b) standard). *Thompson v. Fajerstein*, No. 08 C 3240, 2008 WL 4279983, at *5-6 (N.D.Ill. 17, Sept. 2008). *See also*, *e.g.*, *Russian Media Group, LLC v. Cable Am., Inc.*, No. 06 C 3578, 2008 WL 360692, at *2-4 (N.D.Ill. Feb. 7, 2008); *Martinez*, 527 F.Supp.2d at 837-38; *Pena v. Freedom Mortgage Team, Inc.*, No. 07 C 552, 2007 WL 3223394, at *5 (N.D.Ill. Oct. 24, 2007).

*Fahner v Hedrick,* 108 Ill. App. 3d 83, 90-91(2d Dist. 1982) (failure to disclose existence and terms of exorbitant fee charged in the guise of a "sales commission" establishes clear violation).

### IV. COUNT IV (THE UNJUST ENRICHMENT CLAIM), WHICH IS BASED ON DEFENDANTS' FRAUDULENT CONDUCT, STATES FACTS SUFFICIENT TO CONSTITUTE A CAUSE OF ACTION

For the reasons set forth in Section V. of its Memorandum in Opposition to DW's Motion to Dismiss the SAC, which is incorporated herein by reference, Sahim's unjust enrichment claim states facts sufficient to constitute a cause of action based on defendants' fraudulent conduct.

### CONCLUSION

For the foregoing reasons, and for the reasons set forth in Sahim's Memorandum in Opposition to Dealers Warranty's Motion to Dismiss the SAC, the Court should deny Warranty Finance's motion in its entirety.

Dated: October 22, 2009

**Steven L. Wittels (SLW-8110)**
**SANFORD WITTELS & HEISLER, LLP**
950 Third Avenue, 10th Floor
New York, NY 10022
Tel: 646-723-2947
Fax: 646-723-2948
swittels@nydclaw.com
pending *pro hac vice* admissions

*/s/ Michael F. Ram*
**Michael F. Ram**
**RAM & OLSON LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Tel: 415-433-4949
Fax: 415-433-7311
mram@ramolson.com
*pro hac vice*

**Mark S. Baumkel**
**LAW OFFICES OF MARK S. BAUMKEL & ASSOCIATES**
30200 Telegraph Road, Suite 200
Bingham Farms, MI 48025
Tel: 248-642-0444
Fax: 248-642-6661
m.baumkel@p-ppclawfirm.org
*pro hac vice*

**Bryan J. Waldman**
**LEVIN & PERCONTI**
325 North LaSalle Street, Suite 450
Chicago, IL 60654
Tel: 312-332-2872
Fax: 312-332-3112
bjw@levinperconti.com

*ALL COUNSEL FOR PLAINTIFF JONATHAN J. SAHIM AND THE CLASS*

*F:\docs\1170-01\Opp-WFMotDismiss-Baumkel.doc*