UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| JONATHAN J. SAHIM, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DEALERS WARRANTY, LLC a/k/a Mogi a/k/a FEDERAL AUTO PROTECTION, WARRANTY FINANCE, LLC, and BRIAN ALBERT MARINO,<br><br>Defendants. | Case No. 09-cv-4279<br><br>Judge Milton I. Shadur<br><br>CLASS ACTION |

**PLAINTIFF'S OPPOSITION TO DEFENDANT BRIAN A. MARINO'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT**

**I.   INTRODUCTION**

Contrary to the impression one might derive from out of context quotes from the recent Supreme Court cases of *Iqbal* and *Twombly* by which Defendants introduce their arguments, a plaintiff such as Sahim need not definitively prove his case in the complaint, nor recite evidence proving his claims, but need merely raise a plausible claim for relief containing allegations of fact sufficient to create a "reasonable expectation that discovery will reveal evidence supporting the plaintiff's allegations," *Brooks v. Ross*, 578 F.3d 574, 580-581 (7th Cir. 2009):

> …FED.R.CIV.P. 8(a). The Rule reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002).
>
> In *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007), the Court turned its attention to what was required of plaintiffs at the pleading stage. It concluded

that plaintiffs' '[f]actual allegations must be enough to raise a right to relief above the speculative level.' *Id.* at 555. The Court was careful to note that this did not impose a probability requirement on plaintiffs: 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.' *Id.* at 556, The Court did require, however, that the plaintiffs' claim be 'plausible.' In other words, 'it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations. *Id.*

Here, the Second Amended Complaint ("SAC") alleges facts which raise the involvement of each defendant to a "plausible" level beyond mere speculation. The SAC specifically describes that Dealers Warranty, LLC ("DW") under Brian Marino ("the controlling owner," SAC ¶ 17), had a general business model to perpetrate a fraudulent scheme or plan of creating financing transactions for extended warranty service contracts with a goal of bilking consumers out of fees and interest charges undisclosed in DW's standard form contract documents. (SAC ¶¶ 2-6, 19, 26, 49-50). The SAC describes the involvement of Warranty Finance, LLC ("WF") as the finance company in this scheme to which consumers pay their monthly payments. (SAC ¶¶ 16, 22). As set forth in the SAC, the fraudulent scheme included contract documents with a payment schedule deliberately front-loading payments to the early months of the warranty term so that Defendants would receive unearned profits in advance of actual warranty coverage (*E.g.* SAC ¶¶ 4, 27, 60); and that the form contracts used by DW and WF (attached to Defendants' Motions as Ex. B) failed to disclose so-called "interest charges" and inadequately disclosed huge "marketing fees" to be deducted from customers' *pro rata* cancellation refunds. (*E.g.* SAC ¶26). The SAC further describes exactly how Plaintiff Sahim was victimized by this scheme, including the details of exactly the amount and dates of payments he made, and the amount by which allegedly he was bilked under Defendants' fraudulent business model. (SAC ¶¶ 21-25).

Attached as Exhibit "B" to Defendants' Motions are their standard form "Payment Plan" contracts which are at the center of this case. Plaintiff certainly has no objection to the suggestion that these documents be considered part of the pleadings for purposes of this Motion—as pointed out above, the SAC clearly refers to these standard form contracts. These form contract documents contribute even further factual detail to Plaintiff's allegations, clearly showing: (1) that the financing arrangement at the crux of this scheme involved concerted action between DW and WF (e.g. signature line of the DW version of the contract shows DW signing as agent for Illinois based WF); (2) that WF (acting in Illinois) and DW both purport in the

signature line of their respective contract forms to personally deal with the victims to obtain "per phone" approval; (3) that the documents confirm the allegations in the SAC of failure to disclose the "interest" charges; (4) that DW and WF documents both state on their face to be a "consumer credit/sale transaction" covered by the requirement to make "TRUTH IN LENDING ACT DISCLOSURES" and which set forth the "amount financed"; (5) that both the DW and WF Payment Plan forms promise that Illinois-based WF will calculate cancellation refunds to include *only* such fees/costs as set forth under the Payment Plan itself (which includes no disclosure of "interest" or "marketing fees"); (6) that the underlying Vehicle Service Contract ("VSC") with Warranty America discloses only a $50 "cancellation fee" for CANCELLATION OF VEHICLE SERVICES CONTRACT, and *no other* applicable deductions against a customer's *pro rata* refund; (7) that WF will be liable for all claims consumers may have against DW; and (8) mandatory imposition of the law of Illinois, WF's home state, where all payments were to be made by Plaintiff Sahim.

Therefore, as shown in more detail below, it is preposterous for Defendants to base their Motions on the argument that this is an *Iqbal*-type situation where Plaintiff merely has alleged the word "fraud" with no supporting facts to plausibly create a "reasonable expectation that discovery will reveal evidence supporting the plaintiff's allegations."

## II. THE SECOND AMENDED COMPLAINT STATES A BASIS FOR LIABILITY AGAINST MARINO AND SHOULD BE NOT BE DISMISSED.

The SAC alleges that liability against Marino is for "tortious" acts (SAC ¶ 17), and does not allege that he is liable for DW's contracts.

Marino argues that the Second Amended Complaint ("SAC") fails to allege that he did something wrong. He cites an immunity statute for LLC members, MO. REV. STAT. § 347.057. This statute simply codifies the rule that like a corporate shareholder an LLC member is not liable for claims *merely* as a member of the LLC.[1]

---

[1] In a lengthy opinion dealing with liability claims under Missouri law by an LLC member against another member, the Eighth Circuit explained that liability concepts for LLCs are borrowed from the law of corporations, specifically: that the rule embodied by the Missouri LLC-member immunity statute simply codifies the old concept that the corporate shell protects against liability of shareholder/members for *contract* claims against the corporation, but not tort claims against the controlling LLC member. *In re Tri-River Trading, LLC*, 329 B.R. 252, 267 (8th Cir. BAP 2005). The Illinois LLC Act includes a virtually identical statute, 810 ILCS 180/10-10. As recently held, this "immunity" statute does not provide LLC members protection against claims of fraud – just as with fraud cases against corporate

Marino argues that the SAC does not allege that he personally made any oral or written misrepresentations to Plaintiff. Marino, alleged by Plaintiff to be "the controlling owner" of DW (SAC ¶ 17), ignores that the SAC primarily concerns allegations regarding DW's general business model under which the company perpetrates a fraudulent scheme or plan of creating financing transactions with a goal of bilking consumers out of fees and interest charges undisclosed in DW's standard form contract documents. (SAC ¶¶ 2-6, 19, 26, 49-50).

Count II/ Illinois Consumer Fraud Act. Under either Missouri law or Illinois law, there is no immunity for these non-contract claims, which are based on allegations that Marino exercised his control over the LLC in order to perpetrate a fraud. *In re Tri-River Trading, LLC, supra*; *In re Suhadolnik, supra*.[2]

Count I /TILA. Controlling members of a small mortgage lending corporate entity have been held liable as a "creditor" in a case alleging that the corporate lender's loan documents made inadequate and/or deceptive disclosures. A*rnold v. W.D.L. Invs., Inc.* 703 F.2d 848, 850 (5th Cir. 1983). Other courts have ruled that the controlling corporate principal of a lender alleged to be involved in deceptive lending practices in violation of TILA and state consumer protection laws was not personally liable under TILA as a "creditor" because the evidence there did not show that payments at issue went to him, but nevertheless could be personally liable under state consumer laws as controlling principal of the entity perpetuating fraudulent lending practices. *In re First Alliance Mortgage Co.* 280 B.R. 246 (C.D.Cal. 2002). Marino's Motion to dismiss TILA claims is premature before factual developments via discovery regarding whether Marino exercises his authority as "the controlling owner" of DW to receive the allegedly improper payments made by consumers.

---

shareholders. *In re Suhadolnik*, 2009 WL 2591338 (Bankr. C.D.Ill. 2009). Courts considering this issue under the laws of other states (e.g. Utah and California) also have held that similar LLC statutes do not protect a controlling member from liability for allegations of participation in a fraudulent scheme carried out by the LLC. *E.g. Young v Hamilton*, 92 Fed. Appx. 389 (9th Cir. 2003).

[2] *See also*: *People ex rel. Madigan v. Tang*, 346 Ill.App.3d 277, 284 (Ill. App. 1st Dist. 2004) ("[C]orporate officer status does not insulate [a corporate officer] from individual liability for the torts of the corporation in which he actively participates."); *Eugene Alper Constr. Co., Inc. v. Joe Garavelli's of West Port, Inc.*, 655 S.W.2d 132, 135 (Mo.App.1983) (identifying two elements required to establish personal liability of corporate shareholder under Missouri law: "(1) control and influence by one or a few persons, and (2) a purpose to defeat public convenience, to justify wrong, or to perpetrate fraud").

### III. CONCLUSION

For the foregoing reasons, the Court should deny Brian Marino's motion in its entirety.

Dated: October 22, 2009

_____/s/ Michael F. Ram_____
**Michael F. Ram**
**RAM & OLSON LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Tel: 415-433-4949
Fax: 415-433-7311
mram@ramolson.com
*pro hac vice*

**Mark S. Baumkel**
**LAW OFFICES OF MARK S. BAUMKEL & ASSOCIATES**
30200 Telegraph Road, Suite 200
Bingham Farms, MI 48025
Tel: 248-642-0444
Fax: 248-642-6661
m.baumkel@p-ppclawfirm.org
*pro hac vice*

**Steven L. Wittels (SLW-8110)**
**SANFORD WITTELS & HEISLER, LLP**
950 Third Avenue, 10th Floor
New York, NY 10022
Tel: 646-723-2947
Fax: 646-723-2948
swittels@nydclaw.com
pending *pro hac vice* admissions

**Bryan J. Waldman**
**LEVIN & PERCONTI**
325 North LaSalle Street, Suite 450
Chicago, IL 60654
Tel: 312-332-2872
Fax: 312-332-3112
bjw@levinperconti.com

*ALL COUNSEL FOR PLAINTIFF*
*JONATHAN J. SAHIM AND THE CLASS*