IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JONATHAN J. SAHIM, etc.,           )
                                   )
           Plaintiff,              )
                                   )
    v.                             )    No.  09 C 4279
                                   )
DEALERS WARRANTY, LLC, etc.,       )
et al.,                            )
                                   )
           Defendants.             )

MEMORANDUM OPINION AND ORDER

Jonathan Sahim ("Sahim") has filed a putative class action against three defendants--Dealers Warranty, LLC a/k/a Mogi a/k/a Federal Auto Protection ("Dealers"), Warranty Finance, LLC ("Finance") and Brian Albert Marino ("Marino")--in which the current pleading, Sahim's Second Amended Class Action Complaint ("SAC"), advances a federally-based Count I that asserts (1) a violation of the Truth in Lending Act ("TILA," 15 U.S.C. §1602) and (2) three other counts grounded in state law that invoke this Court's supplemental jurisdiction under 28 U.S.C. §1367 ("Section 1367"). Each of the three defendants has filed a separate motion for dismissal from the action, and Sahim has filed a memorandum in response to each.[1]

---

[1] This action was originally assigned to this Court's colleague Honorable Marvin Aspen, then came to this Court's calendar via random assignment when Judge Aspen recused himself. This Court promptly issued a minute order that eliminated the required filing of reply memoranda, instead setting an October 27 status hearing date for the discussion of that and any other appropriate subjects.

What triggered this litigation are the financial consequences that flowed from Sahim's termination, before the end of its specified 60-month term, of a vehicle service contract ("Service Contract") that he had purchased from Dealers.  Because Sahim claims that he was cheated when he received less than a pro rata refund of any amounts he had assertedly paid for future warranty coverage at the time of termination, he sued not only Dealers but its asserted principal Marino and also Finance (which, though not a party to the Service Contract, had been designated as the company to which Sahim's future monthly payments should be directed).

In terms of Count I, it is really not necessary to engage in the same analysis that applies vis-a-vis Dealers to see that Finance is not a proper target for Sahim's asserted grievance. Even if TILA is in play as to Dealers, a subject to be discussed next, Finance unquestionably did not extend "credit" to Sahim so as to expose itself to potential liability under that statute.

Sahim's responsive memorandum devotes nearly three pages to his asserted TILA claim against Finance (referred to in his memorandum as "WF"), but the arguments there are totally disingenuous.  That memorandum refers to the "consumer credit contract between WF and Sahim," to the "agreement between WF and Sahim," to the "WF-Sahim contract" and to Finance's "standard form contracts"--all the while glossing over (or more accurately,

2

flouting entirely) the fact that both the Service Contract and the Payment Plan Agreement that form the gravamen of Sahim's Complaint expressly and unambiguously specified Dealers and not Finance as the Seller.

It is extraordinarily ironic that a lawsuit grounded in asserted deception should contain such regrettably deceptive mischaracterizations on the part of Sahim's counsel. Whatever else may be said as to Finance's role in the matter, any such attempted sleight of hand that would convert Finance into the status of a lender to Sahim (it should not be forgotten that the "L" in TILA stands for "Lending") is impermissible. It does violence to logic, common sense and the common use of the English language to indulge the fiction that Finance "loaned" to Sahim the $1,353 balance of the price payable over the 60-month term of the Service Contract, with Sahim obligated to "repay" the fictitious loan on a monthly basis.

In sum, Finance's Rule 12(b)(6) motion is granted as to SAC Count I. And as to whether Finance should then be retained in this action at all, the parties should be prepared at the time of the previously scheduled October 27 status hearing to discuss the potential dismissal without prejudice of the state law claims against Finance as well, and relatedly to discuss whether or not a Rule 54(b) determination should be made as to Finance.

Dealers' position is more complex. On that score it must be

3

recognized that the reference to "Lending" in TILA's title renders Sahim's position seriously counterintuitive. There too it appears to distort economic reality to characterize the Service Contract as involving a "loan" to Sahim of the entire contract price, repayable in monthly installments. This Court has had occasion to remark in other cases from time to time that such attempted transmutation of base metal into gold did not work for the alchemists in the Middle Ages, and any reading of the Service Contract suggests that Sahim's lawyers ought to fail just as abjectly in their comparable efforts.

But the situation is muddied considerably by the second document between Sahim and Dealers--one captioned "Payment Plan Agreement"--that utilizes a TILA-type format to describe the situation. That document speaks of a "total sale price" of $1,425, comprising a "$72 'down payment'" and an "amount financed" of $1,353. That form also has several entries under the caption "Truth in Lending Act Disclosures" that (1) list the "amount financed" as $1,353 while (2) showing both the "annual percentage rate" and the "finance charge" as zero.

Despite that TILA-type usage, to stuff the parties' contractual arrangements into the TILA mold still seems an awkward fit, even Procrustean. In that regard, another allusion that this Court has employed from time to time refers to a well-known aphorism traditionally attributed to Abraham Lincoln:

> If you call a tail a leg, how many legs has a dog?
> Five? No, calling a tail a leg don't <u>make</u> it a leg.

This Court recognizes that this opinion is being issued just a day before the upcoming October 27 status hearing. But it is nevertheless hoped that the parties will be prepared to discuss, at a minimum, the already-described tension between (1) the common sense view of the Sahim-Dealers arrangements and (2) the different characterization in the Payment Plan Agreement. This Court expects to deal with the issues in light of that discussion and any further input from the parties that then appears to be needed.

                                                   _____
                                                   Milton I. Shadur
                                                   Senior United States District Judge

Date: October 26, 2009